**EQUAL EMPLOYMENT OPPORTUNI- TY COMMISSION, Plaintiff,**

v.

**STATE OF VERMONT, STATE OFFICE OF the COURT ADMINISTRATOR, and State Department of Finance and Management, Defendants.**

89 Civ. 170.

United States District Court, D. Vermont.

July 18, 1989.

Cheryl Kramer, Trial Atty., E.E.O.C., New York City, for plaintiff.

William B. Gray, Sheehey Brue Gray & Furlong, Burlington, Vt., for defendants.

OPINION AND ORDER

GAGLIARDI, Senior District Judge.

The complaint in this action brought by the plaintiff Equal Employment Opportunity Commission (hereinafter "EEOC") pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (hereinafter "ADEA") seeks, among other relief, a permanent injunction enjoining the defen-

---

dants State of Vermont, State Office of the Court Administrator and State Department of Finance and Management (hereinafter "Vermont") from pursuing any employment practice that discriminates because of age. Simultaneously with the filing of the complaint, the EEOC moved for a preliminary injunction enjoining Vermont from retiring Supreme Court Justice Louis Peck. Vermont was to retire Justice Peck on June 30, 1989, because of his age.

Vermont has cross-moved for summary judgment dismissing the complaint. The court, pursuant to Fed.R.Civ.P. 65(a)(2) and upon consent of the parties, has ordered that the trial of the action on the merits be advanced and consolidated with the hearing on the application for the preliminary injunction.

### Facts

The following are the relevant facts agreed to by the parties.

1. The Vermont Supreme Court is the appellate court of last resort for the State of Vermont. It consists of five active members and hears appeals from the two state trial courts, the probate courts and various agencies of the state government.

2. Louis Peck is a duly appointed and confirmed member of the Vermont Supreme Court. On December 24, 1988, he reached the age of seventy years.

3. The Vermont Constitution provides: All justices of the Supreme Court and judges of all subordinate courts shall be retired at the end of the calendar year in which they attain seventy years of age or at the end of the term of election during which they attain seventy years of age, as the case may be, and shall be pensioned as provided by law. The chief justice may from time to time appoint retired justices and judges to special assignments as permitted under the rules of the Supreme Court.

Vt. Const. ch. II § 35.

4. On September 21, 1981, Louis Peck received a gubernatorial appointment to the supreme court. The Vermont Senate, on January 22, 1982, confirmed that appointment. Pursuant to Vt.Stat.Ann. title 4 § 608 he was retained for a term of six years by vote of the Vermont General Assembly on March 31, 1987. On June 30, 1989, he was scheduled to be retired pursuant to the Vermont Constitution. His mandatory retirement will be based solely on his age and upon his occupation as an associate justice of the Vermont Supreme Court.

5. Justice Peck filed an age discrimination charge with the EEOC on May 10, 1989.

6. The EEOC issued letters of violation on May 18, 1989. Its attempt at conciliation failed, and on June 9, 1989, the EEOC filed the complaint in this case.

7. The State of Vermont, through the State Office of the Court Administrator and the State Department of Finance and Management, is responsible for the administration and enforcement of the retirement laws of the State of Vermont as they pertain to Justice Peck as well as the enforcement of Vt. Const. ch. II, § 35, as it pertains to justices of the supreme court and judges of all subordinate courts.

8. Pursuant to *In re Constitutionality of House Bill 88*, 115 Vt. 524, 64 A.2d 169 (1949) the Vermont Supreme Court does not give advisory opinions and rules only in circumstances where there is a case or controversy.

9. The Vermont Constitution provides: The Supreme Court shall exercise appellate jurisdiction in all cases, criminal and civil, under such terms and conditions as it shall specify in rules not inconsistent with law. The Supreme Court shall have original jurisdiction only as provided by law, but it shall have the power to issue all writs necessary or appropriate in aid of its appellate jurisdiction. The Supreme Court shall have administrative control of all the courts of the state, and disciplinary authority concerning all judicial officers and attorneys at law in the State.

Vt. Const. ch. II, § 30. The supreme court, in exercising this administrative control and disciplinary authority, adopts and promulgates a code of judicial ethics as

well as rules and regulations for the administration and enforcement of the code. The supreme court also prescribes standards and adopts rules for the admission of persons to practice before the Vermont courts and adopts disciplinary rules for the enforcement of the Code of Professional Responsibility.

10. The Vermont Constitution provides:

The Supreme Court shall make and promulgate rules governing the administration of all courts, and shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. Any rule adopted by the Supreme Court may be revised by the General Assembly.

Vt. Const. ch. II, § 37. Pursuant to this authority, the supreme court makes and promulgates rules of practice and procedure in the supreme court, superior courts, district courts, and probate courts of the State of Vermont.

11. In the exercise of its constitutional authority, the supreme court adopts administrative orders with respect to a wide variety of matters, including attorney representation on the judicial nominating board, the prompt disposition of criminal cases, procedures for the processing of traffic offenses, the terms of the superior courts and the assignment of superior and district court judges, and procedures for processing fish and game, boating and snowmobile violations.

12. Justice Peck is currently assigned to act as liaison between the trial courts of Windham, Lamoille and Washington Counties and the supreme court in its administrative capacity.

13. Pursuant to Vt.Stat.Ann. title 1 § 1, Justice Peck has been designated by the chief justice as a member and chairman of the Statutory Revision Commission.

## Discussion

### I

The issues in this case are whether or not the ADEA's prohibition of age discrimination in employment applies to appointed state-court judges, and, if so, whether or not its application to the states is prohibited by the tenth amendment. The only federal courts to pass on these issues are the First Circuit Court of Appeals and the District Court for the Eastern District of Virginia.[1] The First Circuit has concluded that appointed judges engage in policymaking, and that they are thereby excluded from the ADEA's protection.[2] *EEOC v. Massachusetts*, 858 F.2d 52 (1st Cir.1988). The District Court for the Eastern District of Virginia reached the opposite conclusion. In *Schlitz v. Commonwealth of Virginia*, 681 F.Supp. 330 (E.D.Va.1988), *rev'd on other grounds*, 854 F.2d 43 (4th Cir.1988) the court, denying the state's motion to dismiss, held that "[t]he plain language of the ADEA, however, makes it clear that appointed state judges are to be protected

---

1. State courts of last resort have also ruled on this issue. In *Matter of Madame Justice Juanita Stout*, —— Pa. ——, 559 A.2d 489 (1989), the Supreme Court of Pennsylvania held that the ADEA did not apply to appointed state supreme court judges because such judges engage in policymaking through administrative actions as well as through judging. The Supreme Judicial Court of Massachusetts has held that the ADEA does not preempt the mandatory retirement provision of that state's constitution, because Congress did not clearly express the intention that the ADEA was to apply to appointed state-court judges. *Apkin v. Treasurer and Receiver General*, 401 Mass. 427, 517 N.E.2d 141 (1988).

In the context of a decision by the Administrative Board of the Courts of New York (which board consists of the Chief Judge of New York and the Presiding Justices of the Appellate Division) that removed New York's appointed judges

from the scope of the state's mandatory retirement rule, the New York Court of Appeals has held that distinguishing between appointed and elected judges for purposes of mandatory retirement does not violate equal protection. *Diamond v. Cuomo*, 70 N.Y.2d 338, 514 N.E.2d 1356, 520 N.Y.S.2d 732 (1987), *appeal dismissed,* —— U.S. ——, 108 S.Ct. 2008, 100 L.Ed.2d 597 (1988).

The Vermont Attorney General has concluded that the ADEA's protections apply to appointed Vermont judges. See Mandatory Retirement of Vermont Judges and Justices, Op.Att'y Gen. 87–8 (Aug. 7, 1987). The EEOC has also issued an opinion letter that concludes that the ADEA applies to protect appointed state-court judges. See Op.Off.Legal Counsel EEOC–OL–7 (April 7, 1987).

2. See 29 U.S.C. § 630(f) *infra* p. 264.

from age discrimination in employment." *Id.* at 333. The action involved a state-court judge who was appointed by the Virginia Assembly to an eight-year term. The judge reached seventy years of age approximately three weeks before the end of his term and the Assembly refused to reappoint him. The judge argued that he was denied reappointment pursuant to Virginia law that required judges to retire at age seventy. In reversing the district court's denial of Virginia's motion to dismiss, based on the doctrine of legislative immunity, the Fourth Circuit noted that "the Commonwealth has made clear that as a result of the ADEA, its mandatory retirement law for judges is no longer being observed." *Schlitz v. Commonwealth of Virginia,* 854 F.2d at 45.

This court has given the First Circuit's decision the careful study and deference that it unquestionably deserves. *NLRB v. American Fed'n of Television and Radio Artists,* 234 F.Supp. 832 (S.D.N.Y.1964), *aff'd,* 351 F.2d 310 (2d Cir.1965). However, this court is not persuaded that appointed state-court judges are policymakers for the purposes of the ADEA.

## II

The ADEA provides that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1). The term "employer" includes "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State...." *Id.* § 630(b)(2).

Congress expressly exempted certain public officials from the broad sweep of the ADEA's protections. The ADEA provides:

[t]he term "employee" means an individual employed by any employer except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision....

*Id.* § 630(f).

Justice Peck was not "elected to public office in [Vermont] ... by the qualified voters thereof," [3] nor was he chosen by an elected official to "be on such officer's personal staff." He is not an "immediate advisor" to an elected official. Justice Peck, as an appointed state-court judge, is exempted from the ADEA's protection only if he is "an appointee on the policymaking level...." If appointed state-court judges are not policymakers, then the ADEA's protections apply and the mandatory retirement provision of the Vermont Constitution must give way. U.S. Const. art. VI, cl. 2.

The word "policymaker", standing alone, is vague. A policy is "a projected program consisting of desired objectives and the means to achieve them." Webster's Third New International Dictionary. 1754 (1971). In that sense almost all persons, let alone most state government officials, can be characterized as policymakers. For the policymaker exemption to have any meaning, it must apply only to those appointed officials who are *primarily* policymakers.

The First Circuit concluded that judges are policymakers because " 'policymaking' is indisputably a part of the function of judging to the extent that judging involves lawmaking to fill the interstices of authority found in constitutions, statutes, and precedents...." *EEOC v. Massachusetts,* 858 F.2d at 55, (quoting *EEOC v. Commonwealth of Massachusetts,* 680 F.Supp. 455, 462 (D.Mass.1988)). A judge's princi-

**3.** A retention vote by the state assembly does not constitute an election by the qualified voters of a state. 29 U.S.C. § 630(f).

pal activity is to decide cases between litigants involving questions of law in which there are no interstices or lacunae to fill. In any event, gap-filling by judges is really a form of lawmaking, not policymaking. Even in a vernacular sense, lawmaking is not the equivalent of policymaking. A law is

> a rule or mode of conduct that is prescribed or formally recognized as binding by a supreme controlling authority or is made obligatory by a sanction (as an edict, decree, rescript, order, ordinance, statute, resolution, rule, judicial decision or usage) made, recognized, or enforced by the controlling authority.

Webster's Third New International Dictionary, 1279 (1971). Policies are guideposts for present and future conduct. Laws, whether judge-made or statutory, are mandatory standards of conduct. Of course, dictionary definitions do not control the outcome of this case. However, it is clear that policymaking and lawmaking are not the same thing. Policymaking implicates lawmaking and vice versa, but they are essentially different functions.

Vermont urges that its supreme court justices are policymakers in the literal sense because the court administers the Vermont judicial system. Assuming, *arguendo*, that such activity constitutes policymaking, Vermont has not shown that their supreme court justices' primary duties consist of court administration. Nor has Vermont shown which of those duties could conceivably be considered policymaking. If administration is not their primary duty, Vermont Supreme Court Justices are not in any meaningful sense policymakers for the purposes of the ADEA.[4]

    The conclusion that the ADEA applies to protect appointed state-court judges from age discrimination is supported by the plain language of the ADEA. The ADEA's exemptions include elected officials as well as those whose power and job tenure emanate directly from elected officials. The EEOC has characterized these exemptions as follows:

> [i]n exempting policymaking appointees, Congress realized the necessity of allowing elected officials complete freedom in appointing those who would direct state and local departments and agencies. These individuals must work closely with elected officials and their advisors in developing policies that will implement the overall goals of the elected officials. In order to achieve these goals, an elected official is likely to prefer individuals with similar political and ideological outlooks. Congress intended to allow elected officials the freedom to appoint those with whom they feel they can work best.

EEOC Decisions (CCH) ¶ 6725 (1983). Under the doctrine of separation of powers, appointed Vermont judges do not work closely with elected officials to implement such officials' policies because such activity is an executive, not a judicial function. See Vt. Const. ch. II, § 5. Unless "an appointee on the policymaking level" is mere surplusage, there must exist a category of appointees who are not exempted from the

---

**4.** The ADEA contains another exemption that arguably applies to Vermont Supreme Court Justices.

> Section 631(c)(1) of the ADEA provides:
> [n]othing in this chapter shall be construed to prohibit compulsory retirement of any employee who has attained 65 years of age and who, for the 2–year period immediately before retirement, is employed in a bona fide executive or a high policymaking position, if such employee is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profit-sharing, savings, or deferred compensation plan, or any combination of such plans, of the employer of such employee, which equals, in the aggregate, at least $44,-000.
> 29 U.S.C. § 631(c)(1).

Vermont has not offered evidence concerning Justice Peck's retirement benefits. However, even if Justice Peck were entitled to an aggregate of at least $44,000 in an immediate, nonforfeitable annual retirement benefit, this court concludes, based on parts I, II and III of this opinion, that Vermont Supreme Court Justices are not employed in a "high policymaking position" for purposes of the ADEA.

Nor are appointed Vermont judges on the "level" of policymakers, because judges' functions are completely different from appointed, executive policymakers' functions. *See* EEOC Decisions (CCH) ¶ 6725 (1983) *infra* p. 265.

ADEA's protection. The First Circuit's understanding of the activities that constitute "policymaking" makes it difficult to conceive of an appointed official who would *not* be considered a policymaker for purposes of the ADEA. If such were the correct result, Congress would not have qualified "appointee" at all.

### III

The legislative history regarding section 630's exemptions supports the conclusion that the ADEA does not exempt appointed state-court judges from its protection. The Joint Explanatory Statement of Managers at the Conference on H.R. 1746 to Further Promote Equal Employment Opportunities for American Workers concludes:

> [i]t is the intention of the conferees to exempt elected officials and members of their personal staffs, and persons appointed by such elected officials as advisors or to policymaking positions at the highest levels of the departments or agencies of State or local governments, such as cabinet officers, and persons with comparable responsibilities at the local level. It is the conferees [sic] intent that this exemption shall be construed narrowly. Also, all employees subject to State or local civil service laws are not exempted.

Joint Explanatory Statement of Managers at the Conference on H.R. 1746, 92d Cong., 1st Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 2137, 2179, 2180.

Contrary to Vermont's argument that these exemptions should be read broadly to avoid infringing on state sovereignty, the conferees intended that the exemptions be construed narrowly. *Id.* The language

"departments or agencies of State or local governments" further suggests that Congress did not intend the exemptions to extend to members of a separate *branch* of state government such as the judiciary. Departments and agencies are part of the executive branch of government. To find that an appointed state-court judge is a policymaker for purposes of the ADEA expands the ordinary meaning of the word and flies in the face of a narrow construction of that term. Given its detailed consideration of the ADEA's application to state officials, it is clear that Congress would have expressly exempted appointed state-court judges if it desired that result.

The fact that many states appoint at least some of their judges bolsters this conclusion.[5] It is logical to assume that members of Congress know how judges are selected in their own states. It follows from this assumption that if the members of Congress were concerned about the effect that the ADEA would have on the appointed judiciary, some mention of such concern would appear in the legislative history. However, there is no mention of the state judiciary in the legislative history of the ADEA.[6] While it is true that Congress often does not express itself directly, to assume that Congress meant to exclude appointed state-court judges from the ADEA's protections because they are "appointees on the policymaking level" seems manifestly illogical, especially in the context of the other exemptions listed in section 630(f).

### IV

■ Vermont argues that application of the ADEA's protections to appointed state-

---

5. In the Virginia district court proceedings, Virginia apparently represented that ten states appoint their judges. *Schlitz,* 681 F.Supp. at 333. The parties in this case have made no specific assertions as to the number of states that appoint their judges. The court's own research indicates that twelve states appoint appellate judges on at least one level, and that a total of twenty-eight states appoint judges at some level. In Vermont, justices of the Supreme Court as well as judges of the Superior and District Courts are appointed. Probate judges and assistant judges are elected.

6. The ADEA exemption clause is equivalent to that added to Title VII of the Civil Rights Act when that Act was made applicable to the states. 42 U.S.C. § 2000e(f). The legislative history of Title VII exemption clause indicates that Senator Ervin was concerned that, without such an exemption, the term "employee" could be construed as "including an elected official or a person chosen by the elected official to advise him as to his constitutional and legal duties." 118 Cong.Rec. § 4096 (1972) (Statement of Sen. Ervin). No reference to appointed state-court judges appears in the legislative history of Title VII.

court judges who would otherwise mandatorily be retired pursuant to state law violates the tenth amendment to the United States Constitution. In *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), the Supreme Court held that the extension of the ADEA's coverage to state and local governments is a valid exercise of the commerce power. *Id.* at 243, 103 S.Ct. at 1064. The tenth amendment imposes few external constraints on Congress' otherwise valid exercise of its commerce power. *Garcia v. San Antonio Metropolitan Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). *Garcia* overruled *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The Supreme Court concluded in *National League of Cities* that "Congress may not exercise [the commerce power] so as to force directly upon the States its choices as to how essential decisions regarding the conduct of integral governmental functions are to be made." *National League of Cities,* 426 U.S. at 855, 96 S.Ct. at 2476. In overruling *National League of Cities,* the *Garcia* Court rejected "as unsound in principle and unworkable in practice, a rule of state immunity from federal regulation that turns on a judicial appraisal of whether a particular governmental function is 'integral' or 'traditional.'" *Garcia,* 469 U.S. at 546–47, 105 S.Ct. at 1015. The *Garcia* Court concluded,

> [o]f course, we continue to recognize that the States occupy a special and specific position in our constitutional system and that the scope of Congress' authority under the Commerce Clause must reflect that position. But the principal and basic limit on the federal commerce power is that inherent in all congressional action—the built-in restraints that our system provides through state participation in federal governmental action. The political process ensures that laws that unduly burden the States will not be promulgated. In the factual setting of these cases the internal safeguards of the political process have performed as intended.

*Id.* at 556, 105 S.Ct. at 1020. Under *Garcia,* application of the ADEA to appointed state-court judges does not threaten Vermont's independent existence. Vermont senators and representatives have participated in the consideration and promulgation of the ADEA. This court recognizes Vermont's general interest in determining the tenure of its judges. In that respect, Vermont "remain[s] free, under the ADEA to continue to do precisely what [it] is doing now, if [Vermont] can demonstrate that age is a 'bona fide occupational qualification' for the job of [supreme court justice]." *EEOC v. Wyoming,* 460 U.S. at 240, 103 S.Ct. at 1062; 29 U.S.C. § 623(f)(1). The ADEA "requires the State to achieve its goals in a more individualized and careful manner than would otherwise be the case, but it does not require the State to abandon those goals, or to abandon the public policy decisions underlying them." *EEOC v. Wyoming,* 460 U.S. at 239, 103 S.Ct. at 1062. If Vermont cannot show age to be a bona fide occupational qualification for its appointed judges, the people of Vermont may choose to elect their judges and thereby exempt them from the ADEA's protections. In this case, Vermont's "discretion to achieve its goals in the way it thinks best is not being overridden entirely, but is merely being tested against a reasonable federal standard." *Id.* at 240, 103 S.Ct. at 1062.

The court concludes that the plain language of section 630(f) of the ADEA does not exempt appointed state-court judges from the ADEA's protection. The court finds that the legislative history of the ADEA supports that conclusion. The court notes that the EEOC's position is in accord with the plain meaning of the statute and with the intent of Congress. Even if the language of the statute were vague and the intent of Congress indiscernible, this court should defer to the EEOC's construction of the ADEA because its construction is reasonable. *Chemical Manufacturers Assn. v. National Resources Defense Council,* 470 U.S. 116, 126, 105 S.Ct. 1102, 1108, 84 L.Ed.2d 90 (1984).

### Conclusion

For the foregoing reasons, Vermont's motion for summary judgment is hereby denied.

Plaintiff's application for a permanent injunction is granted to the extent that Vermont is enjoined from retiring Justice Louis Peck or any other appointed Vermont judge on the basis of age. As it appears that no other Vermont judges have mandatorily been retired in violation of the ADEA, so much of the EEOC's complaint that concerns retrospective relief for other employees, backpay, liquidated damages and prejudgment interest is dismissed.

So Ordered.