Honorable Ellis GREGORY, Jr.; Honorable Anthony P. Nugent, Jr.; Honorable Douglas W. Greene and Honorable Flake L. McHaney, Appellants,

v.

Honorable John D. ASHCROFT, Appellee.

No. 89–2360.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1989.

Decided March 5, 1990.

Jim J. Shoemake, St. Louis, Mo., Samuel Marcosson, amicus curiae, Washington, D.C., for appellants.

Michael L. Boicourt, Jefferson City, Mo., for appellee.

Before BOWMAN and BEAM, Circuit Judges, and ROSS, Senior Circuit Judge.

BOWMAN, Circuit Judge.

Four Missouri state court judges challenge the provision of the Missouri Constitution that mandates their retirement at age 70. Mo. Const. art. V, § 26(1) (1945 as amended 1976) ("mandatory retirement provision"). Judges Ellis Gregory, Jr., Anthony P. Nugent, Jr., and Douglas W. Greene, argue that the mandatory retirement provision violates the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1982 & Supp.1987). These judges along with Judge Flake L. McHaney further argue that the mandatory retirement provision violates the equal protection clause of the Fourteenth Amendment.

Judges Gregory, Nugent, and Greene were initially appointed and have been retained as judges pursuant to the Missouri Non–Partisan Court Plan ("Missouri Plan"). Mo. Const. art. V, § 25. Under the Missouri Plan, the Governor (selecting from candidates recommended by merit screening commissions) appoints judges to the state supreme court, to the state intermediate appellate court, and to the state circuit courts within Jackson County (which encompasses Kansas City) and the city of St. Louis. At the end of his appointed term, each judge must place his name on the ballot in the next general election if he wishes to be retained for another term. If a majority of the voters vote in favor of retaining the judge in office, he serves another full term on the bench. At the end of that term, the judge again may place his name on the ballot and be retained for yet another full term; except for the mandatory retirement provision, there is no limit on the number of terms a judge may achieve through this ballot-retention method. The judges selected according to the Missouri Plan argue that they are "employees" entitled to the protection of the ADEA because they are neither "elected to public office" nor "appointee[s] on the policymaking level." *See* 29 U.S.C. § 630(f).[1]

The District Court[2] granted Governor John D. Ashcroft's motion to dismiss after determining that Judges Gregory, Nugent, and Greene were excluded from the ADEA definition of "employee" because they are "appointee[s] on the policymaking level," 29 U.S.C. § 630(f), and that the mandatory retirement provision does not violate the Fourteenth Amendment because there is a rational basis for this provision. The judges appeal. We affirm.

## I.

The statutory claim of Judges Gregory, Nugent, and Greene arises out of an asserted conflict between the ADEA, 29 U.S.C. § 621–634, and the provision of the Missouri Constitution that requires judges to retire upon reaching the age of 70. Subject to several exceptions discussed below, the ADEA prohibits an employer from discriminating on the basis of age in making virtually any employment decision regarding an employee who is 40 or more years of age. 29 U.S.C. §§ 623, 631. In 1976, when the mandatory retirement provision was added to the Missouri constitution, it was unaffected by the ADEA, which at that time applied only to employees between the

---

1. The parties do not dispute that Judge McHaney, elected to office in a traditional partisan election, does not fall within the coverage of the ADEA. *See* 29 U.S.C. § 630(f) ("term 'employee' shall not include any person elected to public office ...").

2. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

ages of 40 and 65. In 1978, Congress raised the age limit of 65 to 70, and in 1986 (effective January 1, 1987), it eliminated the upper age limit and amended the ADEA to cover all employees having reached the age of 40. *See* 29 U.S.C. § 631(a).

It is undisputed that if the definition of "employee" contained in the ADEA extends to Judges Gregory, Nugent, and Greene, the application to them of the mandatory retirement provision would be a violation of the Act. Under the supremacy clause of the United States Constitution, a conflict between a constitutionally valid federal law and state law must be resolved in favor of the federal law. *See* U.S. Const. art. VI, cl. 2. Thus, "to the extent that the [ADEA] conflict[s] with existing state mandatory retirement statutes, the Supremacy Clause dictates that federal law prevail." *Orzel v. City of Wauwatosa Fire Dep't,* 697 F.2d 743, 752 (7th Cir.), *cert. denied,* 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983). For supremacy clause purposes, it makes no difference that here the mandatory retirement provision is found in the state constitution rather than in a state statute. Because, however, the tenure of state judges is a matter of considerable importance to a state, and one that traditionally has been left to each state to regulate, we will examine the ADEA to determine whether Congress explicitly and unequivocally manifested its intent to preempt state law in this area. *See United States v. Bass,* 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971) ("In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision."). We do not think Congress would have passed legislation that so significantly intrudes on a state's power to regulate its judiciary without giving serious consideration to the con-

sequences of the legislation, its implications for our federal system, and the question of its constitutional basis. We therefore will not interpret the ADEA as conflicting with the Missouri Constitution unless we find that Congress clearly has expressed its intention to bring state judges into the ambit of the federal statute. *Accord EEOC v. Massachusetts,* 858 F.2d 52, 54 (1st Cir.1988).

■ We now turn to the language of the statute. The central issue is whether the "except" clause in the ADEA definition of "employee" applies to appointed state court judges and thereby excludes them from the protection of the Act.

> The term "employee" means an individual employed by any employer *except that* the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, *or an appointee on the policymaking level* or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

29 U.S.C. § 630(f) (emphasis added).

As a preliminary matter, we note that the District Court found Judges Gregory, Nugent, and Greene, initially appointed by the Governor and retained in office by a majority of the voters as required by the Missouri Plan, to be outside the ADEA's exception for persons "elected to public office". Although we are inclined to disagree with this aspect of the District Court's decision, the Governor did not cross-appeal this issue, it was not briefed by either side, and it is not properly before us. We therefore express no opinion on this point, and shall assume for the balance of this opinion that state judges selected according to the Missouri Plan are appointed and not "elected" within the meaning of the ADEA.[3]

---

**3.** Interestingly, the EEOC has taken the position that a state judge "who is appointed by the governor or the legislature but must appear on a ballot before the general electorate for either retention or rejection would be excepted from the term 'employee' under the ADEA as a 'person elected to public office.'" EEOC Opinion Letter to Rep. Claude Pepper, April 7, 1987, *reprinted in* EEOC Compliance Man. (BNA) at N:1001, n. 2.

It follows that our task is to determine whether appointed state judges are "appointee[s] on the policymaking level." A handful of federal and state courts have addressed this issue. *See EEOC v. Massachusetts*, 858 F.2d 52 (1st Cir.), *aff'g* 680 F.Supp. 455 (D.Mass.1988); *EEOC v. Illinois*, 721 F.Supp. 156 (N.D.Ill.1989); *EEOC v. Vermont*, 717 F.Supp. 261 (D.Vt.1989); *Schlitz v. Virginia*, 681 F.Supp. 330 (E.D. Va.), *rev'd on other grounds*, 854 F.2d 43 (4th Cir.1988); *In re Stout*, 521 Pa. 571, 559 A.2d 489 (1989); *Apkin v. Treasurer and Receiver Gen.*, 401 Mass. 427, 517 N.E.2d 141 (1988). Of these, only in *Vermont*, 717 F.Supp. at 264, and *Schlitz*, 681 F.Supp. at 334, has it been held that state judges are not "appointee[s] on the policymaking level." The other four cases all reach the opposite conclusion, and thus hold that appointed state judges are not within the purview of the ADEA.

Appellants urge us to adopt the reasoning and holding of the district courts in *Vermont* and *Schlitz*. They argue that a literal reading of the "policymaking level" exception supports their position because the principal function of a judge is not to make policy, but rather to "decide cases between litigants involving questions of law in which there are no interstices or lacunae to fill." *Vermont*, 717 F.Supp. at 265; Appellant's Brief at 10. We recognize that this view of the role of the judge is not without its adherents. Although it may accurately describe the judge's role in the easy cases, we cannot agree that it does so across the broad spectrum of cases with which judges must deal. The reality of judging is that it is not always—and perhaps not even usually—merely a matter of mechanically applying settled, unambiguous principles of law to specific fact patterns as they arise. We therefore are attracted to the view taken by the First Circuit:

> "[P]olicymaking" is indisputably a part of the function of judging to the extent that judging involves lawmaking to fill the interstices of authority found in constitutions, statutes, and precedents.... Moreover, the substantive interest identified by the phrase "on the policymaking level" is closely aligned with an interest referred to by phrases such as "exercise of discretion" and "exercise of judgment," which are indisputably descriptive of most of the performance of those persons within the judicial branch who serve as judges....

*EEOC v. Massachusetts*, 858 F.2d 52, 55 (1st Cir.1988) (*quoting EEOC v. Massachusetts*, 680 F.Supp. at 462 (D.Mass.1988)). In keeping with our common law tradition, judges in deciding the particular cases before them may establish either general standards or specific rules of decision that may be relied upon in the future by other judges, by other branches of government, by attorneys and other professionals in advising their clients, and by members of the public in planning their affairs either individually or in organizations of every kind. Whatever the judicial philosophy of the particular judge, and whether he views his proper role as broad or narrow, his decisions—some of them, at least—necessarily will resolve issues previously unsettled and thus will create law.[4] Within the boundaries established by settled law, and mindful that it is not for the judiciary to usurp the functions of other branches of government, judges must exercise the same sort of discretion in decisionmaking, temper their rulings with the same sort of self-restraint, and engage in the same sort of thoughtful judgment that is required of

---

**4.** The decisions of the Missouri Supreme Court establish common law for the entire state. *See, e.g., Gustafson v. Benda*, 661 S.W.2d 11 (Mo. 1983) (en banc) (Court rejects previously established tort doctrine of last clear chance and adopts system of comparative negligence as contained in Uniform Comparative Fault Act §§ 1–6 (1983)). Moreover, decisions made in the state courts sometimes involve close and difficult questions of law that have far-reaching ethical, moral, and public policy implications. *See, e.g., Cruzan v. Harmon*, 760 S.W.2d 408 (Mo.1988) (en banc) (holding that parents or other legal guardians lack authority to require that food and water be withheld from comatose daughter who has no cognitive brain function but is neither dead nor terminally ill), *cert. granted*, —— U.S. ——, 109 S.Ct. 3240, 106 L.Ed.2d 587 (1989).

"appointee[s] on the policymaking level" in the executive and legislative branches.

Furthermore, many of Missouri's appointed judges exercise considerable policymaking responsibility in the supervision of the Missouri court system. The three levels of the Missouri courts are administered by the Chief Justice of the Supreme Court, the Chief Judges of the various divisions of the court of appeals, and the Presiding Judges in the circuit courts, each having general supervisory powers. Mo. Const. art. V, § 4. The Missouri Supreme Court is responsible for adopting the rules governing the professional conduct of the Missouri judiciary and the Missouri Bar. Moreover, the Missouri Supreme Court is responsible for resolving disputes within the judicial hierarchy. *See In re Rules of Circuit Court for Twenty–First Judicial Circuit,* 702 S.W.2d 457 (Mo.1985) (en banc) (after Twenty–First Judicial Circuit split into factions and was unable to adopt court rules, Supreme Court stepped in and suspended constitutional provision allowing associate circuit judges to participate in election of presiding judge); *In re Rules of Circuit Court of Twenty–First Judicial Circuit,* 757 S.W.2d 590 (Mo.1988) (en banc) (after significant headway was made in the implementation of administrative court rules in the circuit, privilege of voting for presiding judge was restored to associate circuit judges). The considerable supervisory power exercised by the justices of the Supreme Court, and to a lesser extent by the court of appeals and circuit court judges, further demonstrates that Missouri judges perform important policymaking functions.

Appellants claim that the context of the exception for an "appointee on the policymaking level", placed as it is within a series of exemptions which apply primarily to the executive and legislative branches of government, indicates that it applies exclusively to appointees within these two branches of government and not to appointees within the judiciary. Appellant's Brief at 11–12. We do not agree. If the policymaking level exception is read in this limited manner, none of the four categories of exemptions from the coverage of the ADEA would apply to employees in the

judicial branch in those states where judges are appointed. We believe it is highly unlikely that Congress intended this result, and the implausibility of the total exclusion of the appointed members of the state judiciary from any exemption under the ADEA, despite the total exemption of elected judges from the coverage of the Act, weighs heavily against such a narrow reading of the policymaking level exception. *See EEOC v. Massachusetts,* 680 F.Supp. at 460–61.

Appellants base their argument in part on legislative history of the exemptions set forth in section 630(f) of the ADEA:

[i]t is the intention of the conferees to exempt elected officials and members of their personal staff, and persons appointed by such elected officials as advisors or to policymaking positions at the highest levels of the departments or agencies of State or local governments, such as cabinet officers, and persons with comparable responsibilities at the local level. It is the conferees intent that this exemption shall be construed narrowly.

Joint Explanatory Statement of Managers at the Conference on H.R. 1746, 92d Cong., 1st Sess., *reprinted in* 1972 U.S. Code Cong. & Admin.News 2179–2180. Relying on this snippet of legislative history (which we are not inclined to assign a great deal of weight, since the only reliable guide to legislative intent is the language and structure of the statute itself), appellants argue that the state courts cannot be considered agencies of state or local government. *See* Appellant's Brief at 13. We disagree. It seems to us far more realistic to view the state judiciary as one of the more powerful "agencies" of state government. The term "government" in this country traditionally has implied the tripartite of the executive, legislative, and judicial branches. We are not persuaded that the language quoted above indicates that Congress clearly intended the "appointee on the policymaking level" exemption in Section 630(f) to apply only to individuals in the executive and the legislative branches. In our view, this legislative history proves little. If anything, it suggests that the conferees simply were

not thinking about state judges when they adopted the short statement upon which appellants rely.

If we were to read the "appointee on the policymaking level" exemption as appellants urge us to, we would be left with the anomalous result that low-level employees in the executive and legislative branches would be excluded from the ADEA's coverage if they were on the personal staff of an elected official, while the highest ranking officials in the judicial branch—the judges (but only when appointed rather than elected)—were included within the ADEA's umbrella. As another court noted:

> the resulting line between those who are and those who are not "employees" would be not merely a somewhat wavering line because of the different characteristics and different sets of interests identified by the four different categories in the "except" clause but, more strikingly, a line jumping sharply up or down as to levels of authority and levels of discretionary performance, depending on whether one served in an elective office (in which case even lower tier officers would be excepted, in all three branches of government) or an appointive office (in which case persons serving in discretionary or advisory positions would be covered in the judicial branch and excepted in the other two branches).

*EEOC v. Massachusetts,* 680 F.Supp. at 462. Thus an employee, such as a law clerk hired by an elected judge to be on his personal staff, would be exempt from the ADEA while the highest ranking judges in Missouri would be covered by the Act simply because they are appointed. We conclude that Congress's designation of "appointee[s] on the policymaking level" as an exemption to the ADEA definition of "employee" manifests an interest in excluding persons entrusted with extensive decision-making authority and discretionary power from the protection of the Act. There is no

rational basis for deeming this interest to be more compelling in the executive and legislative branches than in the judiciary, and we refuse to embrace such an inconsistent position. *Accord EEOC v. Illinois,* 721 F.Supp. at 159 ("Absent an express Congressional intent to limit the exception to the legislative and executive branch, a rational reading must include high ranking state officials in all three branches.").

In Missouri, where the majority of state judges are elected, the irrationality of not excluding appointed judges from the ADEA as "appointee[s] on the policymaking level" is even more pronounced. There is simply no principled basis for treating Missouri's appointed judges differently from its elected judges for purposes of the ADEA.[5] *EEOC v. Massachusetts,* 858 F.2d at 57 ("The distinction between elected and appointed state judges, which the appellant would have us draw, is nonsensical in terms of furthering the balancing intended by Congress."). Significantly, were we to hold that appointed judges are included within the coverage of the ADEA, it would create an incentive for Missouri to abolish the Missouri Plan and return to selecting all its judges through a purely elective process. Appellants' "proposed reading of the statute would introduce into the political dispute on this controversial issue of state government a federally-imposed factor significantly weighing against a choice by the state electorate to have state judges appointed." *EEOC v. Massachusetts,* 680 F.Supp. at 461. Absent a clear expression of Congressional intent to cause this result, we decline to read the exemptions to the ADEA in such a manner.

Finally, appellants argue that this Court's decision in *Stillians v. Iowa,* 843 F.2d 276 (8th Cir.1988), requires us to find that appointed state court judges are not "appointee[s] on the policymaking level." In *Stillians,* we articulated three factors relevant to the determination whether an

---

**5.** The EEOC argues that states which elect their judges have decided to make them policymakers, responsive to the voters, while states with an appointed bench have chosen to "insulate[ ] [it] from the political process to which those who make governmental policy are subjected." Brief for EEOC as *amicus curiae* at 9. This argument is unconvincing. The powers and responsibilities of appointed and elected judges are identical and it is these powers and responsibilities that determine whether a judge is on the "policymaking level."

employee was an "appointee on the policy-making level": "(1) whether the [appointee] has discretionary, rather than solely administrative powers, (2) whether the [appointee] serves at the pleasure of the appointing authority, and (3) whether the [appointee] formulates policy." *Id.* at 278–79 (citations omitted). A judge appointed under the Missouri Plan clearly does not serve at the pleasure of the governor who appoints him, and appellants contend that this is dispositive of the question whether they are policymakers for the purposes of the ADEA. We must remember, however, that the sole issue in *Stillians* was whether the program director of the Iowa Arts Council was an "appointee on the policy-making level." (We held that he was.) The application of the policymaking level exception to appointed state judges is a question of first impression for this Court. We do not believe that the list of factors in *Stillians* was intended to be exhaustive or necessarily applicable in all respects to every kind of appointed official. In addition, we stated in *Stillians* that the purpose of the policymaking level exception was to give "[s]tate governors ... broad discretion to fill policymaking positions without fear of being sued by disappointed office seekers." *Id.* at 279. This concern is at least as important in the instant case as it was in *Stillians*. The Governor of Missouri must have the freedom to appoint as judges the persons he feels are best qualified without fear of subjecting himself to age discrimination claims. Moreover, the second factor in *Stillians* reasonably can be read as applying to judges appointed under the Missouri Plan. Following the Governor's appointment of a judge, he serves at the pleasure of the people as a majority of the voters must vote in favor of retaining him if he is to serve another term on the bench. Once the judge's initial term

of office is at an end, the voters become, in a very real sense, the appointing authority, for it is they who decide whether or not he continues in office, and he thus serves at their pleasure.

For the reasons stated above, we hold that judges appointed under the Missouri Plan are excluded from the coverage of the ADEA because they are "appointee[s] on the policymaking level" within the meaning of 29 U.S.C. § 630(f).

## II.

■ All four of the judges contend that the Missouri mandatory retirement provision for state court judges violates the equal protection clause of the Fourteenth Amendment.[6] We do not agree and note that we are unable to find even a single case wherein a state mandatory retirement provision has been invalidated under the Fourteenth Amendment.

Appellants concede that because legislation addressed toward persons over the age of 70 is not subject to heightened scrutiny for constitutional infirmity, our review of the Missouri mandatory retirement provision is confined to determining whether it rationally furthers a legitimate state purpose. *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312–13, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976) (per curiam). Appellants argue, however, that after *City of Cleburne, Tex. v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), the rational-basis test is no longer as highly deferential to the state as it formerly was, and the state should be held to a strict standard of proof when attempting to establish the rational basis for a state law that has been challenged on equal protection grounds. Because the District Court

---

**6.** Appellants also claim that the mandatory retirement provision violates the due process clause. We take this to be a substantive due process claim. Appellants have not articulated, however, what fundamental right Missouri's mandatory retirement provision denies them and we therefore will not address this issue. If they are claiming a fundamental right to retain their judgeships after age 70, we categorically reject the notion that the Constitution provides

any such right. *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (per curiam) ("This Court's decisions give no support to the proposition that a right of governmental employment *per se* is fundamental."); *see also San Antonio School Dist. v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973) (holding that the right to an education is not a fundamental right guaranteed by the Constitution).

dismissed their claims without an evidentiary hearing, appellants claim that the state has not met its burden and no rational basis for the mandatory retirement provision has been shown.

Appellants' argument that an evidentiary hearing is required on the rational-basis issue is without merit. In *Pennell v. City of San Jose*, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988), a case decided after *Cleburne*, the record before the Supreme Court consisted of the lower court's judgment on the pleadings; no evidence was produced. The Court held that the ordinance at issue violated neither the due process nor equal protection clauses of the Fourteenth Amendment. *Id.* at 13–14, 108 S.Ct. at 858–59.

> As we stated in *Vance v. Bradley*, 440 U.S. 93, 99 [99 S.Ct. 939, 944, 59 L.Ed.2d 171] (1979), "we will not overturn [a statute that does not burden a suspect class or a fundamental interest] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational."

*Id.* 485 U.S. at 14, 108 S.Ct. at 859. *Pennell* thus makes it clear that the rational-relationship standard remains a highly deferential standard even after *Cleburne*. And in *Cleburne* itself, the Court stated:

> [t]he lesson of *Murgia* is that where individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to implement, the courts have been very reluctant, as they should be in our federal system and with our respect for the separation of powers, to closely scrutinize legislative choices as to whether, how, and to what extent those interests should be pursued. In such cases, the Equal Protection Clause requires only a rational means to serve a legitimate end.

*Cleburne*, 473 U.S. at 441–42, 105 S.Ct. at 3255–56.

Our task, then, is to determine whether the mandatory retirement provision is a rational method by which Missouri may serve its legitimate goal of maintaining a highly qualified and vigorous state judiciary. The Missouri Supreme Court considered this issue in *O'Neil v. Baine*, 568 S.W.2d 761 (Mo.1978) (en banc), when it upheld a mandatory retirement provision applicable to state magistrate and probate judges against constitutional challenges. The court articulated a number of rational bases for the mandatory retirement provision including (1) the societal interest in a judicial system of the highest caliber which justifies the drawing of a line at an age at which there is often a lessening in mental and physical abilities; (2) the advantages of an objective line "to avoid the tedious and often perplexing decisions to determine which judges after a certain age are physically and mentally qualified and those who are not;" (3) the increase in opportunities to enter the judiciary for qualified younger persons with fresh ideas and techniques; (4) the interest in assuring "predictability and ease in establishing and administering judge's pension plans." *Id.* at 766–67. These rationales are consistent with the conclusions of several other courts. *See, e.g., EEOC v. Massachusetts*, 858 F.2d at 57–58 (it avoids the "perilous task of evaluating the performance of … older judges", "[t]he forced turnover may permit the appointment of judges that more closely reflect prevalent points of view, as well as the present societal makeup"); *Malmed v. Thornburgh*, 621 F.2d 565, 572 (3d Cir.), *cert. denied*, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980) (a mandatory retirement provision "eliminates the unpleasantness of selectively removing aged … judges"); *Trafelet v. Thompson*, 594 F.2d 623, 627, 629 (7th Cir.) (it is rational to treat "judges differently from other officials on the ground that the work of judges makes unique and exacting demands on faculties that age tends to erode," "[m]andatory retirement … reduces delays in the administration of justice caused by death or disabling illness of sitting judges," the risk of which increases as a judge's age increases), *cert. denied*, 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979); *Apkin*, 517 N.E.2d at 146 ("A line drawn at age seventy eliminates the anguish, time, delay, expense,

and embarrassment of the supervision and removal of older judges of failing competence pursuant to an evaluation process. An age limit on the service of judges also tends to assure that important decisions ... will be made by judges who command respect because they share experiences and understandings similar to those of the majority of adult citizens.... [Furthermore, it] makes it possible to increase the proportion of minority group members and women in the judiciary, thereby making the judiciary more representative of society"). One might disagree with some or all of these rationales on either empirical or philosophical grounds and yet be unable properly to conclude that a state which thinks otherwise lacks a rational basis for its mandatory retirement rule for judges.

Because we cannot say that Missouri's mandatory retirement provision for state judges lacks a rational basis, we affirm the District Court's determination that the provision does not violate the equal protection clause of the Fourteenth Amendment.

The judgment of the District Court is affirmed.