**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**v.**

**STATE OF HAWAII; Office of the Administrative Director of the Courts, State of Hawaii; and The Judiciary, State of Hawaii, Defendants.**

**Civ. No. 91–00262 DAE.**

United States District Court, D. Hawaii.

May 13, 1991.

---

John de J. Pemberton, Jr., Marian Halley and Douglas J. Farmer, E.E.O.C., San Francisco Dist. Office, San Francisco, Cal., for plaintiff.

Warren Price, III, Ann Burns, Celia L. Jacoby and Charleen M. Aina, Deputy Attys. Gen., State of Hawaii, Honolulu, Hawaii, for defendants.

## ORDER GRANTING THE EEOC'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

DAVID A. EZRA, District Judge.

The motion of plaintiff Equal Employment Opportunity Commission ("EEOC") for a temporary restraining order and preliminary injunction came on for hearing before this court on May 13, 1991. Douglas J. Farmer, Esq. appeared for the EEOC; Ann V. Burns and Celia Jacoby, Deputy Attorneys General, appeared for defendants State of Hawaii, Office of the Administrative Director of the Courts, and the Hawaii Judiciary (collectively, "the State"). The court having reviewed the motion and the memoranda filed in support thereof and in opposition thereto, having heard oral argument of counsel, and being fully advised as to the premises herein, GRANTS the EEOC's motion for a temporary restraining order and preliminary injunction.

## BACKGROUND

Judge Harry T. Tanaka ("Judge Tanaka"), Associate Judge of the Hawaii Intermediate Court of Appeals, will turn seventy (70) years old on May 15, 1991. Pursuant to a provision of the Hawaii Constitution, he is subject to mandatory retirement on his seventieth birthday. *See* Haw.Const. Art. VI, Sec. 3. Seeking to prevent Judge Tanaka's forced retirement, Judge James S. Burns ("Judge Burns"), Chief Judge of the Hawaii Intermediate Court of Appeals, filed a complaint with the EEOC on December 18, 1990. *See* Declaration of Paula Montanez (hereinafter "Montanez Declaration"), Exhibit "1." His complaint expressed the belief that the 70–year mandatory retirement age may violate the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA").

On January 14, 1991, after investigating Judge Burns' complaint and concluding Judge Tanaka's job performance had at all relevant times been above reproach, the EEOC issued a Letter of Violation finding Hawaii's mandatory retirement provision contravenes section 4(a) of the ADEA. *See* Montanez Declaration, Exhibit "2." Pursuant to section 7(b) of the ADEA, the EEOC attempted, through informal conciliation, to secure an agreement from the State that it would not enforce the mandatory retirement provision against Judge Tanaka. Montanez Declaration at ¶ 12. When those efforts proved unsuccessful, the EEOC filed its complaint in this court on May 1, 1991.

The EEOC now seeks an order restraining temporarily and enjoining preliminarily the State's enforcement of its mandatory retirement provision against Judge Tanaka. The issue dispositive of this case, whether the ADEA applies to appointed state judges, is currently pending before the United States Supreme Court. *See Gregory v. Ashcroft,* 898 F.2d 598 (8th Cir.1990), *cert. granted,* —— U.S. ——, 111 S.Ct. 507, 112 L.Ed.2d 519 (1990). The Court heard oral argument in *Gregory* on March 18, 1991. Should the Court find state judges exempt from the ADEA under section 11(f) of that act, the EEOC has promised to voluntarily dismiss its complaint. Memorandum in Support at 4. On the other hand, the Supremacy Clause would prevent the State from compelling Judge Tanaka's retirement should the *Gregory* Court find appointed state judges protected by the ADEA.

## DISCUSSION

I. *Standard for Granting Injunctive Relief*

This court has jurisdiction to enjoin practices that threaten a violation of the

ADEA. 29 U.S.C. § 626(b). To obtain a preliminary injunction, the moving party must show *either* (1) a combination of probable success on the merits and the possibility of irreparable injury, *or* (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Half Moon Bay Fishermans' Mktg. v. Carlucci,* 857 F.2d 505, 507 (9th Cir.1988); *Sierra On-Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1422 (9th Cir.1984); *Zepeda v. United States I.N.S.,* 753 F.2d 719, 727 (9th Cir.1983).

These formulations are not different tests; rather, they represent two points on a sliding scale in which the degree of irreparable harm that must be shown increases as the probability of success on the merits decreases. *Lydo Enterprises, Inc. v. City of Las Vegas,* 745 F.2d 1211, 1212 (9th Cir.1984) (citation omitted). "If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Half Moon,* 857 F.2d at 507. EEOC argues it is entitled to injunctive relief under the second test: it maintains that serious questions going to the merits are raised and that the balance of hardships tips sharply in its favor.

## II. *Injunctive Relief Is Appropriate*

The ADEA protects "employees" from age discrimination. The ADEA excludes from its definition of "employee" any individual who is "an appointee on the policymaking level." 29 U.S.C. § 630(f). The parties here dispute whether Judge Tanaka, who was appointed by the governor, is an "appointee on the policymaking level." If he is not such an appointee, he is entitled to the ADEA's protections and cannot be forced to retire on his seventieth birthday.[1] Because of a split in authority among the state and federal courts,[2] the Supreme Court will decide this precise issue in *Gregory.* The State acknowledges that the Court's decision in *Gregory* will be dispositive of the EEOC's claim. *See* Certificate of Compliance with Fed.R.Civ.P. 65, Exhibit "3;" State's Memorandum in Opposition at 15.

### A. Whether Serious Questions are Raised

Clearly, serious questions are raised regarding the State's right to insist on Judge Tanaka's retirement at age 70. The Ninth Circuit has not spoken on the issue presented, and the courts that have decided the issue squarely disagree. While a bare majority concludes appointed state judges are excluded from the ADEA's protections, *see* footnote 2 *supra,* it is far from clear that the Supreme Court will not decide otherwise.

The Supreme Court's decision in *Gregory* is likely to issue in a matter of weeks.[3] Regardless which way the Court rules, its decision will dispose of this case. EEOC asks only that this court preserve the *status quo* until it has the benefit of the *Gregory* decision; it does not presently seek a permanent injunction.

The State says the EEOC can show no probability of success on the merits because its claim is time-barred. It suggests that under *Lorance v. AT & T Technolo-*

---

**1.** There is one exception. Even if Judge Tanaka is not "an appointee on the policymaking level," the State could require his retirement if it could show that being under age 70 is a "bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1). The State has not made that argument.

**2.** *Compare* cases finding appointed state judges within the "appointed policymaker" exception, and thus excluded from the ADEA's protections:
*Gregory v. Ashcroft,* 898 F.2d 598 (8th Cir. 1990); *EEOC v. Massachusetts,* 858 F.2d 52 (1st Cir.1988); *EEOC v. Illinois,* 721 F.Supp.

156 (N.D.Ill.1989); *In re Stout,* 521 Pa. 571, 559 A.2d 489 (1989)
*with* cases finding appointed state judges outside the "appointed policymaker" exception, and thus entitled to the ADEA's protections:
*EEOC v. Vermont,* 904 F.2d 794 (2nd Cir. 1990); *Schlitz v. Virginia,* 681 F.Supp. 330 (E.D.Va.), *rev'd on other grounds,* 854 F.2d 43 (4th Cir.1988).

**3.** The court librarian of this United States District Court spoke with the Clerk of Court for the United States Supreme Court on May 10, 1991. The clerk indicated the Court would likely issue a decision no later than July.

*gies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989) and *Hamilton v. 1st Source Bank,* 928 F.2d 86 (4th Cir.1990), the EEOC should have brought its complaint before January 1, 1990. The ADEA requires that charges be filed with the EEOC within 180 days after the unlawful practice has occurred. 29 U.S.C. § 626(d)(1). The State insists the unlawful practice occurred here on January 1, 1987, when Congress extended the ADEA's protections to persons over age 70. State's Memorandum in Opposition at 10. It says the ADEA's conflict with the Hawaii Constitution should have become evident when Congress took that action.

It is certainly arguable that the unlawful practice did not occur on January 1, 1987, but at some point earlier this year, when it became obvious the State intended to require Judge Tanaka's retirement on May 15, 1991. It is even arguable that the unlawful practice has not yet occurred, but will in fact take place on May 15, 1991, when Judge Tanaka actually becomes subject to Haw.Const. Art. VI, section 3.[4] In addition, even if a court did find that the 180-day limitations period began to run on January 1, 1987, the EEOC could raise equitable tolling arguments to extend the period. Finally, the *Lorance* case itself states expressly that a facially discriminatory system "can be challenged at any time." 109 S.Ct. at 2269. A court could well find that Haw.Const. Art. VI, section 3 sets up a facially discriminatory retirement system. Thus, serious questions exist as to whether the EEOC's claim would fail on statute of limitation grounds.

The court finds the EEOC has satisfied the first prong of the *Half Moon* test for entitlement to preliminary injunctive relief. It has shown the existence of serious questions going to the merits of whether the State can compel Judge Tanaka's retirement.

**B. The Balance of Hardships**

The EEOC must also show that the balance of hardships tips sharply in its favor. *Half Moon,* 857 F.2d at 507. It has made that showing. EEOC points out that once removed from his position, Judge Tanaka will be effectively committed to retirement. Because of his age, it is unlikely he will be able to find other employment of comparable status and responsibility. Declaration of Harry T. Tanaka at ¶ 7 and Declaration of James S. Burns at ¶¶ 6 & 7 (Judge Tanaka would not even be allowed to serve as a temporary judge). Financial hardship will also result to Judge Tanaka because his retirement benefits will be substantially less than his current salary. Tanaka Declaration at ¶ 6. No less importantly, Judge Tanaka's emotional and psychological health will suffer as a result of being forced to retire while he is still fully competent to perform his duties. *Id.* at ¶¶ 5 & 8.

The State avers that should the Supreme Court decide *Gregory* in Judge Tanaka's favor, Judge Tanaka could simply come out of retirement and reenter his post. State's Memorandum in Opposition at 6. The State cites H.R.S. § 88–98 in support of that assertion. This court's reading of section 88–98 does not confirm the State's argument. Section 88–98 says only that a retirant who returns to employment shall be reinstated as an active member of the retirement system. It says nothing about the ability of appointed state officials, who are subject to state senate confirmation, to return to their positions after having been forced to resign them.

The State suggests this court has the equitable powers to require Judge Tana-

---

**4.** *Lorance* holds that the applicable limitations period commences when the discriminatory policy or plan is adopted. However, that holding derived largely from the Court's desire to protect persons who had relied to their detriment on the validity of a *facially lawful* policy. 109 S.Ct. at 2269. That rationale does not apply here. There is nothing to show that any former Hawaii judge has ever relied on Haw.Const. Art. VI, section 3 to his or her detriment. Taking the State's argument to its logical conclusion, the limitations period could theoretically expire with respect to a particular judge even before that judge had been appointed. Given the patent injustice of that result, there are clearly serious litigable questions as to whether *Lorance* compels the conclusion that the limitations period in this case commenced on January 1, 1987.

162

ka's reinstatement. However, given Judge Tanaka's status as an appointed official subject to senate confirmation, there is serious question about this court's prerogative, as an arm of the *federal judiciary*, to usurp a function properly reserved to the *state executive and legislative* branches. Section 88–98 does not tip the balance of hardships in the State's favor, and it does not provide assurances that this court can remedy any harm to Judge Tanaka through reinstatement and back pay.

Next, the State contends that if the *Gregory* decision exempts Judge Tanaka from the ADEA's protections, any cases he decides after turning 70 will be subject to reversal under *In re Application of Pioneer Mill Co.*, 53 Haw. 496, 497 P.2d 549 (1972). It is possible that future litigation could result in the reversal of some of Judge Tanaka's decisions under *Pioneer Mill*. However, the State can protect its legitimate interest in the efficient use of judicial resources by seeking an order from the Hawaii Supreme Court that precludes Judge Tanaka from issuing any decisions until *Gregory* has been decided. As the State admits it will not be able to permanently replace Judge Tanaka before the *Gregory* decision issues, *see* Memorandum in Opposition at 12 n. 6, the fact that he may not be able to execute dispositive orders will in no way change the Intermediate Court of Appeals' ability to adjudicate the cases on its docket. Moreover, because a state circuit judge already on the State's payroll would, in all likelihood, be appointed to perform Judge Tanaka's duties temporarily, the granting of injunctive relief will in no way increase the State's financial burden.

Finally, the State argues that the entry of an injunction "would result in the imposition of a significant limitation on the power of the people of Hawaii to determine the qualifications of their judges." State's Memorandum in Opposition at 7. The court acknowledges the State's sovereignty interest in having its presumptively valid constitutional provisions upheld. *See New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351, 98 S.Ct. 359, 363, 54 L.Ed.2d 439 (1977); *Lydo*, 745

F.2d at 1213. However, the court cannot agree that suspending the operation of Haw.Const. Art. VI, section 3 for a matter of weeks will result in irreparable injury to the State that is more severe than the harm threatening Judge Tanaka. It is entirely possible that *Gregory* will invalidate Hawaii's constitutional provision under the Supremacy Clause. Should that result obtain, a refusal by this court to grant injunctive relief would have resulted in no palpable advantage to the State, while it would have harmed Judge Tanaka irreparably.

Judge Tanaka desires to continue serving as a judge. *Id.* at ¶ 4. The State admits he has not engaged in any misconduct and that as of today, he remains fully capable of serving as a judge on Hawaii's Intermediate Court of Appeals. Having balanced the relative hardship to the parties, the court finds Judge Tanaka will suffer the greater harm if the court does not enjoin his forced retirement pending the Supreme Court's decision in *Gregory*. The balance of hardships tips sharply in the EEOC's favor.

## CONCLUSION

For the reasons stated, the court PRELIMINARILY ENJOINS the State from compelling Judge Tanaka's retirement on May 15, 1991. The injunction will remain in effect until the United States Supreme Court issues its written decision in *Gregory v. Ashcroft*, No. 90–50, and this court has, on the motion of either party or on its own motion, lifted the preliminary injunction or imposed a permanent injunction.

IT IS SO ORDERED.