Albert F. SABO, et al.

v.

Robert P. CASEY, et al.

I. Raymond KREMER, et al.

v.

Robert P. CASEY, et al.

Civ. A. Nos. 90–7945, 91–0073.

United States District Court,
E.D. Pennsylvania.

Feb. 14, 1991.

Steven M. Feldman, Gary Lee, Philadelphia, Pa., for plaintiffs.

Howard M. Hermes, Administrative Office of Pa., Philadelphia, Pa., Gwendalia Mosley, Office of Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM

NEWCOMER, District Judge.

### I. *Factual Background*

Plaintiffs [1] are state judges sitting in the Courts of Common Pleas in either Philadelphia County or Delaware County, all of whom have or will reach age seventy before the expiration of their current terms of office. Plaintiffs are challenging the constitutionality of Article V, § 16(b) of the Pennsylvania Constitution which mandates that all judges be retired upon reaching the age of 70 years.[2] The judges are bringing this action under the Fourteenth Amendment of the United States Constitution and the Age Discrimination Act ("ADEA" or "the Act"), 29 U.S.C. § 621, *et. seq.*, claiming that the Pennsylvania constitutional provision, Article V, § 16(b), violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment, that the ADEA violates the Due Process clause of the Fifth Amendment, and requesting that this court strike the allegedly unconstitutional portion of the ADEA, and in so doing extend the protection of the ADEA to plaintiff judges and find that Article V, § 16(b) violates the ADEA.

The court will first address defendants' motions to dismiss in which they claim that this court has no jurisdiction over this matter. The court will then address defendants' contention that they are entitled to judgment as a matter of law on their claim under the ADEA. Finally, the court will set forth its findings of fact and conclusions of law on plaintiffs' constitutional challenge to the mandatory "retirement" provision in Article V, § 16(b).

### II. *Motions to Dismiss*

The Commonwealth has moved the court, during the hearing for a permanent injunction in this case, to dismiss the Commonwealth as a party. The Court Administrator of Pennsylvania, Nancy M. Sobelovitch, has also moved the court to dismiss her as a party to plaintiffs' action, or in the alternative, to enter judgment in her favor on plaintiffs' constitutional challenge to the ADEA. The Commonwealth has also moved to dismiss The Honorable Leon Katz as a plaintiff in this suit as his claims are barred by res judicata.

The Commonwealth argues that plaintiffs' suit against it is barred by the eleventh amendment of the United States Constitution. The Court Administrator also

---

1. By stipulation of all parties, this case has been consolidated with a related case, *I. Raymond Kremer et al. v. Robert P. Casey et al.,* Civ. A. No. 91–0073. The plaintiffs included in this action, as consolidated, are The Honorable Albert Sabo, The Honorable Angelo A. Guarino, The Honorable Howard F. Reed, The Honorable Rita E. Prescott, The Honorable Dominic D. Jerome, The Honorable Raymond Kremer, The Honorable Armand Della Porta, and The Honorable Leon Katz.

2. Article V, § 16(b) of the Pennsylvania Constitution provides in relevant part:

   "[j]ustices, judges and justices of the peace shall be retired upon reaching the age of 70 years."

contends that plaintiffs' suit is barred by the eleventh amendment, that she is not a necessary and proper party to this action, and further asserts that she is entitled to judgment as a matter of law on plaintiffs' constitutional attack on the ADEA.

The court will grant the Commonwealth's motion to dismiss it as a party to this action. The court will, however, deny the Court Administrator's request to dismiss her as a party. The Court Administrator's motion to enter judgment in her favor on plaintiffs' constitutional attack on the ADEA will be granted, and the Court will grant defendants' motion to dismiss Judge Katz as a plaintiff in this action.

### A. *The Eleventh Amendment:*

#### 1. *The Commonwealth:*

■ The eleventh amendment of the United States Constitution provides in relevant part, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of another State ..." U.S. Const. amend. XI. The sovereign immunity granted the states in the eleventh amendment also extends to suits brought against a State by a citizen of that state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). A state, therefore, cannot be sued in federal court unless the state consents to suit against it, absent "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States,'" *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67, 77–78 (1984) citing *Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979) (holding that 42 U.S.C. § 1983 does not override States' eleventh amendment immunity). Congress has made no indication that adjudication of suits brought pursuant to the fourteenth amendment mandate the abrogation of state immunity. The court will therefore dismiss the Commonwealth as a party to this action.

#### 2. *The Court Administrator:*

■ Defendant Court Administrator of Pennsylvania contends that plaintiffs' action is barred by the eleventh amendment. However, although Commonwealth officials are named in this suit, this is not a suit against the Commonwealth for eleventh amendment purposes. A suit challenging the constitutionality of a state official's action is not one against the State. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). "The theory of [*Ex Parte Young*] was that an unconstitutional enactment is 'void' and therefore does not 'impart to the [officer] any immunity from responsibility to the supreme authority of the United States.' *Ex Parte Young,* at 160, 52 L.Ed.2d 714, 28 S.Ct. 441 [at 454]. Since the State could not authorize the action, the officer was 'stripped of his official or representative character and [was] subjected in his person to the consequences of his individual conduct.'" *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89 at 102, 104 S.Ct. 900 at 909, 79 L.Ed.2d 67, at 79–80. Therefore, despite that fact that this case involves a constitutional challenge to a state constitutional provision, the proper parties to this action are the state officials responsible for the allegedly unconstitutional behavior. Moreover, the eleventh amendment does not bar suits against state officials where, as here, the only means of relief sought are declaratory and injunctive relief to restrain a state official from prospective enforcement of an unconstitutional state law. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). "When a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89 at 102, 104 S.Ct. 900 at 909, 79 L.Ed.2d 67, at 79–80 citing *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The eleventh amendment, therefore, does not bar this suit as against the Court Administrator.

### B. *Necessary and Proper Parties:*

■ The Administrator of the courts further contends that she is not a necessary or

proper party to this action and that this suit, as against her, should therefore be dismissed. For the reasons that follow, the court finds that the Court Administrator is a necessary and proper party to this action.

Defendant Court Administrator is appointed by the Pennsylvania Supreme Court pursuant to Article V, § 10 of the Pennsylvania Constitution. She maintains the central records relating to the qualifications, employment status, basis of compensation and other personnel information of all personnel of the judicial system, pursuant to Rule 505 of the Pennsylvania Rules of Judicial Administration. Defendant Court Administrator is responsible for authorizing the treasurer to discontinue payment of salary to a judge upon reaching age seventy, and is responsible for certifying any vacancy to the secretary and governor so that the judicial position can be filled in the next election. Part of the relief sought by plaintiffs is that the Court Administrator be enjoined and restrained from causing plaintiffs to be removed because of mandatory retirement from the payroll of judges, from causing others to be placed on the payroll in their stead, and from causing a notice of vacancy to be certified to the Governor and Secretary of the Commonwealth of the judicial office of each plaintiff. That the Court Administrator's duties are ministerial in nature does not preclude plaintiffs from including her in this action. Courts have often allowed suits to enjoin performance of ministerial duties in connection with allegedly unconstitutional laws. *Finberg v. Sullivan*, 634 F.2d 50 at 54 (3d Cir.1980) (en banc). "The inquiry is not on the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights." *Ibid.* Clearly, the Court Administrator's official duties in combination with the acts of others deprive plaintiffs of their right to continue in office. The foregoing amply demonstrates that the Court Administrator is a proper party.

## C. *Res Judicata:*

■ A federal court, when determining the preclusive effect of a judgment rendered by a state court, must look to the law of the rendering state. 28 U.S.C. § 1738 (1982). *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Therefore, this court must "give preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

Pennsylvania law requires that in order "for the doctrine of res judicata to prevail there must be a concurrence of four conditions: 1) identity of issues, 2) identity of causes of action, 3) identity of persons and parties to the action, and 4) identity of the quality or capacity of the parties suing or sued." *Safeguard Mutual Ins. Co. v. Williams*, 463 Pa. 567, 345 A.2d 664, 668 (1975).

In 1988, plaintiff Leon Katz intervened in an action for declaratory judgment filed against the Commonwealth by an attorney, Harold Gondelman, in the Commonwealth Court of Pennsylvania. In *Gondelman v. Com.*,[3] Gondelman, Katz and three other judges intervened in the action, seeking to have Article V, § 16(b) of the Pennsylvania Constitution declared unconstitutional on grounds that it violates the equal protection and due process clauses of the fourteenth amendment, and challenging that the mandatory retirement provision violated the ADEA. The Commonwealth Court dismissed the claim that Article V, § 16(b) violates the ADEA for failure to state a claim, but concluded that there existed material issues of fact which precluded summary relief. The Supreme Court of Pennsylvania then agreed to allow the parties to immediately appeal to the Supreme Court for resolution of the central legal questions involved.

On appeal, in *Gondelman v. Com.*,[4] the Pennsylvania Supreme Court upheld the

---

3. 120 Pa.Commonwealth Ct. 624, 550 A.2d 814 (1988).

4. 520 Pa. 451, 554 A.2d 896 (1989).

constitutionality of Article V, § 16(b), resolving the federal constitutional claims against plaintiff Katz. Therefore, because Katz has already had his opportunity to fully litigate both the constitutional challenges to Article V, § 16(b) and the challenge to the mandatory retirement provision under the ADEA, he is precluded from relitigating these issues in this court. Accordingly, plaintiff Katz must be dismissed as a plaintiff in this action, as his claims are barred by res judicata.

### D. *ADEA:*

#### 1. *Summary Judgment Standard:*

As the constitutional challenge to the ADEA involves only questions of law, the court will consider plaintiffs' challenge as it would a motion for summary judgment. A trial court may enter summary judgment if, after review of all evidentiary material in the record, there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law. *Lang v. New York Life Insurance Co.*, 721 F.2d 118, 119 (3d Cir.1983); *Bank of America National Trust and Savings Association v. Hotel Rittenhouse Associates*, 595 F.Supp. 800, 802 (E.D.Pa.1984).

#### 2. *ADEA:*

■ The ADEA prohibits an employer from discriminating on the basis of age in making virtually any employment decision regarding any employee who is over the age of 40 years. 29 U.S.C. §§ 623, 631. The ambit of protection under the ADEA does not extend to specified categories of persons, however, including "any person elected to public office.... or **an appointee on the policymaking level,**" 29 U.S.C. § 630(f) (emphasis added). While **elected judges**, as "person[s] elected to public office," are clearly not protected under the ADEA, Plaintiffs contend that **appointed judges** are not "appointees on the policymaking level," ("policymakers") and therefore, since they do not fall within any of the exceptions set forth in the ADEA, **are** protected under the ADEA. Plaintiffs further contend that the ADEA exemption provision, in differentiating between the two types of judges, violates the Due Process Clause of the Fifth Amendment,[5] arguing that there is no rational basis for extending protection against age discrimination to appointed judges while refusing to extend such protection to elected judges.

The first question the court must answer in considering plaintiffs' argument is whether appointed judges are "policymakers," within the meaning of the ADEA. The majority of courts having considered this issue have held that judges are "policymakers" within the meaning of the statute and therefore are not protected under the ADEA. See e.g. *EEOC v. Massachusetts*, 858 F.2d 52 (1st Cir.1988); *EEOC v. Illinois*, 721 F.Supp. 156 (D.Vt.1989); *In re Stout*, 521 Pa. 571, 559 A.2d 489 (1989); *Apkin v. Treasurer and Receiver Gen.*, 401 Mass. 427, 517 N.E.2d 141 (1988); *Gregory v. Ashcroft*, 898 F.2d 598 (8th Cir.1990).[6]

> "[P]olicymaking" is undisputably a part of the function of judging to the extent that judging involves lawmaking to fill the interstices of authority found in constitutions, statutes, and precedents.... Moreover, the substantive interest identified by the phrase "on the policymaking level" is closely aligned with an interest referred to by phrases such as "exercise of discretion" and "exercise of judgment, which are indisputably descriptive of most of the performance of those persons within the judicial branch who serve as judges ...

*Gregory v. Ashcroft*, 898 F.2d 598 (8th Cir.1990) quoting the First Circuit in *EEOC*

---

**5.** The Due Process Clause of the Fifth Amendment forbids the federal government from denying equal protection of the laws. See *Vance v. Bradley*, 440 U.S. 93, 94, 99 S.Ct. 939, 941, 59 L.Ed.2d 171, 174 (1979), n. 1 (citations omitted).

**6.** But See *Schlitz v. Virginia*, 681 F.Supp. 330 (E.D.Va.) rev'd on other grounds 854 F.2d 43 (4th Cir.1988), and *EEOC v. Vermont*, 717

F.Supp. 261 (D.Vt.1989) (holding that judges are not "appointees on the policymaking level" for purposes of the ADEA).

*Gregory v. Ashcroft* was granted review by the Supreme Court on this very issue in ⸺ U.S. ⸺, 111 S.Ct. 507, 112 L.Ed.2d 519 (1990), however, no decision has yet been handed down.

*v. Massachusetts,* 858 F.2d 52, 55 (1st Cir. 1988) (quoting *EEOC v. Massachusetts,* 680 F.Supp. 455, 462 (D.Mass.1988))."

The limited legislative history available on the exemption provision has not shed much light on its interpretation. See Joint Explanatory Statement of Managers at the Conference on H.R. 1746, 92nd Cong., 1st Sess. Reprinted in 1972 U.S.Code Cong. & Admin.News 2137, 2179–2180.

[i]t is the intention of the conferees to exempt elected officials and members of their personal staff, and persons appointed by such elected officials as advisors or to policymaking decisions at the highest levels of the departments or agencies of the State or local governments, such as cabinet officers, and persons with comparable responsibilities at the local level. It is the conferees intention that this exemption be construed narrowly.

Although plaintiffs in *Gregory v. Ashcroft,*[7] argued that this brief and barely informative statement evidences a congressional intention to limit the exception in the ADEA only to policymakers in the legislative and executive branches, the court is unpersuaded by that argument. The "explanatory" statement is no indication that judges were not included in the category of high ranking government officials intended to be excepted from the Act. Clearly, judges are the "highest level of [the judicial] department." This court has not found, nor has it been presented with, any reasons why Congress would differentiate between similarly ranked officials in all three branches of government. Accord *Gregory v. Ashcroft,* 898 F.2d 598 at 602, 603 (8th Cir.1990); *EEOC v. Illinois,* 721 F.Supp. 156 at 159 (N.D.Ill.1989). The court therefore finds no rational basis for limiting the ADEA exception for policymakers to the executive and legislative branches. Moreover, there is no reason for the court to assume that Congress would differentiate between appointed and elected judges.[8]

Having determined that the ADEA extends its protection to neither judges who are elected nor judges who are appointed, the court need not address plaintiffs' equal protection argument further, as all judges are treated uniformly under the Act. Moreover, in light of the fact that the ADEA expressly excludes elected officials from its ambit of protection, this court has no authority to rework the parameters of that protection unless the Act is in whole or in part unconstitutional. In order to prevail on a constitutional attack, plaintiffs would have to show that excluding elected officials and high ranking political appointees from protection of the ADEA serves no legitimate congressional purpose.

Because there is no discrimination against a suspect class, nor any fundamental interest involved here, the applicable standard of review is the "rational relationship" standard. See *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). (The class of elderly people is not a suspect class nor is the right to public employment a fundamental interest).

Under the rational relationship test, "[a] statutory discrimination will not be set aside if **any** state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961) (emphasis added). See also *Weinburger v. Salfi,* 422 U.S. 749, 780, 95 S.Ct. 2457, 2474, 45 L.Ed.2d 522 (1975). (A court may even hypothesize as to the motivations of the state legislature to find a legitimate objective promoted by the challenged provision).

As there is pitifully little legislative history to shed light on this matter, and as defendants have failed to advance any possible objectives of the provision, the court will conduct its own analysis as to what motivating factors led Congress to enact the exemption provision in the ADEA.

Clearly, there is a legitimate federal interest in allowing states discretion in ad-

---

7. 898 F.2d 598 at 602 (8th Cir.1990).

8. Indeed, plaintiffs themselves argue that "there is no rational basis in distinguishing between

appointed judges and elected judges." (Plaintiffs' brief p. 29).

ministering governmental services. States should be permitted to achieve their desired objectives with persons whom the state has determined to be most able or qualified. Excluding elected officials and high ranking members of local government from the ADEA furthers this purpose. It allows states to institute mandatory retirement so that states can integrate more members of minorities and women into high ranking governmental positions, opening up positions to a new generation. Moreover, the forced turnover may permit appointment of persons that more closely reflect prevalent points of view, as well as the present societal makeup. See *EEOC v. Massachusetts*, 858 F.2d 52, 55 (1st Cir.1988). It allows states to administer their pension plans uniformly and therefore more efficiently. The exemption provision also allows states to impose mandatory retirement at a certain age to reduce delays in the administration of duties of both elected officials and political appointees. Surely, there are numerous other rationales for the exemption provision, with legitimate Congressional objectives.

As plaintiffs have failed to establish that the ADEA exemption provision is unconstitutional, the court will enter judgment in favor of defendants and against plaintiffs on plaintiffs' constitutional challenge to the ADEA.

## III. *Equal Protection and Due Process*

The court will next address Plaintiffs' challenge to Article V, § 16(b) of the Pennsylvania Constitution, brought pursuant to the Fourteenth Amendment, whereby Plaintiffs claim that the Pennsylvania constitutional provision, Article V, § 16(b), violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

### A. *Findings of Fact:*

1. All plaintiffs are Judges of the Court of Common Pleas in Philadelphia or Delaware Counties.

2. All plaintiffs are citizens of either Delaware County or Philadelphia, Pa.

3. All plaintiffs have or will reach age seventy before the expiration of their current terms as judges.

4. Defendant Robert P. Casey is the Governor of the Commonwealth of Pennsylvania.

5. Defendant Christopher A. Lewis is the Secretary of the Commonwealth of Pennsylvania.

6. Defendant Nancy M. Sobelovitch is the Court Administrator of the Commonwealth of Pennsylvania.

7. Defendant Catherine Baker Knoll is the Treasurer of the Commonwealth of Pennsylvania.

8. The court, as per the request made by counsel for plaintiffs in this case, takes judicial notice of all relevant statutes, rules of court and official statements of the constitutional convention as set forth in the list of such provisions submitted by counsel for all parties to this action.

9. (a) Plaintiff Albert F. Sabo is a Judge of the Court of Common Pleas of the First Judicial District of Pennsylvania, composed of the County of Philadelphia and holds his office by reason of election and pursuant to a Commission issued by the Governor of Pennsylvania in December, 1983, which certified his right to hold said office for ten years to be computed from the first Monday of January, 1984. He is a citizen of the United States and a resident of Philadelphia, Pennsylvania.

(b) Plaintiff Angelo A. Guarino is a Judge of the Court of Common Pleas of the First Judicial District of Pennsylvania, composed of the County of Philadelphia, and holds his office by reason of election and pursuant to a commission issued by the Governor of Pennsylvania in December, 1983, which certified his right to hold said office for ten years to be computed from the first Monday of January, 1984. He is a citizen of the United States and a resident of Philadelphia, Pennsylvania.

(c) Plaintiff Howard F. Reed, Jr., is a Judge of the Court of Common Pleas of Delaware County, Pennsylvania, and holds his office by reason of election and pursuant to a commission issued by the Governor

of Pennsylvania in December, 1979, which certified his right to hold said office for ten years to be computed from the first Monday of January, 1980. He is a citizen of the United States and a resident of Delaware County, Pennsylvania.

(d) Plaintiff Rita E. Prescott is a Judge of the Court of Common Pleas of Delaware County, Pennsylvania, and holds her office by reason of election and pursuant to a commission issued by the Governor of Pennsylvania in December, 1985, which certified her right to hold said office for ten years to be computed from the first Monday of January, 1986. She is a citizen of the United States and a resident of Delaware County, Pennsylvania.

(e) Plaintiff Dominic D. Jerome is a Judge of the Court of Common Pleas of Delaware County, Pennsylvania, and holds his office by reason of election and pursuant to a commission issued by the Governor of Pennsylvania in December, 1981, which certified his right to hold said office for ten years to be computed from the first Monday of January, 1982. He is a citizen of the United States and a resident of Delaware County, Pennsylvania.

(f) Plaintiff Leon Katz is a Judge of the Court of Common Pleas of Philadelphia County, Pennsylvania and holds his office by reason of election and pursuant to a commission issued by the Governor in Pennsylvania in December 1981, which certified his right to hold said office for ten years to be computed from the first Monday of January, 1982. He is a citizen of the United States and a resident of Philadelphia County.

(g) Plaintiff Raymond Kremer is a Judge of the Court of Common Pleas of Philadelphia County, Pennsylvania and holds his office by reason of election and pursuant to a commission issued by the Governor in Pennsylvania in December 1987, which certified his right to hold said office for ten years to be computed from the first Monday of January, 1988. He is a citizen of the United States and a resident of Philadelphia County.

(h) Plaintiff Armand Della Porta is a Judge of the Court of Common Pleas of Philadelphia County, Pennsylvania and holds his office by reason of election and pursuant to a commission issued by the Governor in Pennsylvania in December 1983, which certified his right to hold said office for ten years to be computed from the first Monday of January, 1984. He is a citizen of the United States and a resident of Philadelphia County.

10. The Commonwealth of Pennsylvania is a State and has employed 20 or more persons for each working day in each of 20 or more calendar weeks in the current and preceding calendar year and is the current employer of plaintiffs.

11. (a) Plaintiff Albert F. Sabo was born on December 21, 1920. He was elected to serve a full ten year term in November, 1973, and was elected to retain his office in November, 1983, and was last duly commissioned as aforesaid. He attained his seventieth birthday on December 21, 1990.

(b) Plaintiff Angelo A. Guarino was born on March 23, 1921. He was elected to serve a full ten year term in November, 1973, was elected to retain his office in November, 1983, and was last duly commissioned as aforesaid. He will attain his seventieth birthday on March 23, 1991.

(c) Plaintiff Howard F. Reed, Jr. was born on December 20, 1920. He was appointed on January 2, 1969, was elected to serve a full ten year term in November, 1979, was elected to retain his office in November, 1979 and 1989, and was last duly commissioned as aforesaid. He attained his seventieth birthday on December 20, 1990.

(d) Plaintiff Rita E. Prescott was born on June 6, 1921. She was elected to serve a full ten year term in November, 1975, was elected to retain her office in November, 1985, and was last duly commissioned as aforesaid. She will attain her seventieth birthday on June 6, 1991.

(e) Plaintiff Dominic D. Jerome was born on February 16, 1922. He was appointed on December 23, 1970, was elected to serve a full ten year term in December, 1971, was elected to retain his office in Novem-

ber 1981 and was last duly commissioned as aforesaid. He will attain his seventieth birthday on February 16, 1992.

(f) Plaintiff Leon Katz was born on December 25, 1921. He was appointed on May 8, 1980, and was elected to serve a full ten year term in November 1981. His term commenced January 4, 1982. He was scheduled to stand for retention but was denied because he will reach age seventy before the completion of his present term. He will attain his seventieth birthday on December 21, 1991.

(g) Plaintiff Raymond Kremer was born on January 28, 1921. He was appointed on December 8, 1976, was elected in 1977. He began serving his term in January, 1978 and was retained for another ten year term in 1988. He attained his seventieth birthday on January 28, 1991.

(h) Armand Della Porta was born on December 20, 1921. He was appointed on December 30, 1971, and elected in November 1973, commenced service in January 1974. He was retained for another term in 1984. He will attain his seventieth birthday on December 20, 1991.

12. Plaintiffs have filed a charge with the United States Equal Employment Opportunity Commission averring that their mandatory retirement at age seventy is unlawful under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

13. Article V, § 16(b) of the Constitution of Pennsylvania requires that all justices, judges and justices of the peace shall be retired upon attaining the age of seventy years as follows:

(b) Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years. Former and retired justices, judges and justices of the peace shall receive such compensation as shall be provided by law. No compensation shall be paid to any justice, judge or justice of the peace who is suspended or removed from office under section eighteen of this article or under article six.

14. Article V, § 12 of the Constitution of Pennsylvania establishes the qualifications of justices, judges and justices of the peace and provides as follows:

§ 12. Qualifications of justices, judges and justices of the peace.

(a) Justices, judges and justices of the peace shall be citizens of the Commonwealth. Justices and judges, except the judges of the traffic court in the City of Philadelphia shall be members of the bar of the Supreme Court. Justices and judges of statewide courts, for a period of one year preceding their election or appointment and during their continuance in office, shall reside within the Commonwealth. Other judges and justices of the peace, for a period of one year preceding their election or appointment and during their continuance in office, shall reside within their respective districts, except as provided in this article for temporary assignments.

(b) Judges of the traffic court in the City of Philadelphia and justices of the peace shall be members of the bar of the Supreme Court or shall complete a course of training and instruction in the duties of their respective offices and pass an examination prior to assuming office. Such courses and examinations shall be as provided by law.

15. Article V, § 13 of the Pennsylvania Constitution provides in pertinent part for the election of justices, judges and justices of the peace and the filling of a judicial vacancy as follows:

§ 13. Election of justices, judges and justices of peace, vacancies

(a) Justices, judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve.

(b) A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor. The appointment shall be with the advice and consent of two-thirds of the members elected to the Senate, except in the case of justices of the peace which shall be by a majority. The person so appointed shall serve for a term ending on the

first Monday of January following the next municipal election more than ten months after the vacancy occurs or for the remainder of the unexpired term whichever is less, except in the case of persons selected as additional judges to the Superior Court, where the General Assembly may stagger and fix the length of the initial terms of such additional judges by reference to any of the first, second and third municipal elections more than ten months after the additional judges are selected shall be provided by this section for the filling of vacancies in judicial offices.

(c) The provisions of section thirteen (b) shall not apply either in the case of a vacancy to be filled by retention election as provided in section fifteen (b), or in the case of a vacancy created by failure of a justice or judge to file a declaration for retention election as provided in section fifteen (b). In the case of a vacancy occurring at the expiration of an appointive term under section thirteen (b), the vacancy shall be filled by election as provided in section thirteen (a).

13.   Article V, § 15 of the Pennsylvania Constitution provides in pertinent part for the election of justices, judges and justices of the peace as follows:

§ 15.   Tenure of justices, judges and justices of the peace

(a) The regular term of office of justices and judges shall be ten years and the regular term of office for judges of the municipal court and traffic court in the City of Philadelphia and of justices of the peace shall be six years.  The tenure of any justice or judge shall not be affected by changes in judicial districts or by reduction in the number of judges.

(b) A justice or judge elected under section thirteen (a), appointed under section thirteen (d) or retained under this section fifteen (b) may file a declaration of candidacy for retention election with the office of the Commonwealth who under law shall have supervision over elections on or before the first Monday of January of the year preceding the year in which his term of office expires.  If no declaration is filed, a vacancy shall exist upon the expiration of the term of office of such justice or judge, to be filled by election under section thirteen (d) if applicable. If a justice or judge files a declaration, his name shall be submitted to the electors without party designation, on a separate judicial ballot or in a separate column on voting machines, at the municipal election immediately preceding the expiration of the term of office of the justice or judge, to determine only the question whether he shall be retained in office.  If a majority is against retention, a vacancy shall exist upon the expiration of his term of office, to be filled by appointment under section thirteen (b) or under section thirteen (d) if applicable. If a majority favors retention, the justice or judge shall serve for the regular term of office provided herein, unless sooner removed or retired.  At the expiration of each term a justice or judge shall be eligible for retention as provided herein, subject only to the retirement provisions of this article.

14.   The defendant Governor nominates a judge to fill a vacancy in the office of judge and with the advice and consent of two-thirds of the members elected to the senate appoints a judge to fill such a vacancy.  42 Pa.C.S. § 3132.  Any judicial office previously held by a judge or justice who has attained seventy years of age has been considered to be a vacancy to be filled pursuant to this gubernatorial appointment power.

15.   The defendant Governor issues commissions pursuant to Article IV, § 19 of the Pennsylvania Constitution and issues commissions to each person elected as judge pursuant to 25 P.S. § 3165.

16.   The defendant Governor issues commissions to persons elected to judicial offices made vacant by a judge who has attained seventy years of age.  Following the mandatory retirement of each of the plaintiffs on the attainment of his or her seventieth birthday, the Governor will issue commission to persons elected to judicial offices that were previously filled by the plaintiffs.

17. (a) Defendant Secretary of the Commonwealth is responsible for notifying and designating to the county board of each county all offices, including justices and judges, for which candidates are to be nominated. Act of June 3, 1937, P.L. 1333, Art. IX, § 905, as amended by the Act of August 13, 1963, P.L. 707, § 10, 25 P.S. § 2865.

(b) Defendant Secretary of the Commonwealth is responsible for certifying to county boards of election for primaries and election the names of the candidates for … all State offices, including senators, representative and judges of all courts of record, pursuant to the Act of June 3, 1937, P.L. 1333, Art. II, § 201, 25 P.S. § 2621.

(c) Defendant Secretary of the Commonwealth certifies, as a judicial vacancy, the office of any judge who has attained seventy years of age. Defendant Secretary of Commonwealth does not certify, for inclusion on the ballot of a retention election, any judge who has attained seventy years of age.

18. Defendant Treasurer of the Commonwealth is responsible for paying all salaries established by law pursuant of the Act of March 30, 1811, P.L. 145, 5 Sm.L. 228, § 8, as amended by the Act of July 18, 1974, P.L. 472, No. 168, § 1, and Act of November 6, 1987, P.L. 394, No. 81, § 1, 72 P.S. § 4521. The Treasurer of the Commonwealth will not pay a salary for judicial service to a judge who attains seventy years of age. Defendant State Treasurer will, however, commence to disburse funds to which such a judge is entitled pursuant to the provision of the State Employees' Retirement Code, 71 PA.C.S. § 5101 *et seq.*

19. Defendant Court Administrator is appointed by the Pennsylvania Supreme Court pursuant to Article V, § 10 of the Pennsylvania Constitution. She is responsible for the maintenance of central records relating to the qualifications, employment status, basis of compensation and other personnel information of all personnel of the judicial system compensated in whole or in part through funds appropriated to the judicial system pursuant to Rule 505 of the Pennsylvania Rules of Judicial Administration. Defendant Court Administrator authorizes the defendant Treasurer the Commonwealth to discontinue the salary of any judge who attains seventy years of age and thereby causes judges to be barred from and taken off of the State Judicial payroll pursuant to the mandatory retirement provisions. Defendant Court Administrator also certifies to the defendant Governor and to the defendant Secretary of the Commonwealth a vacancy in any judicial office held by a judge who attains seventy years of age.

20. Pursuant to Article V, § 16(c) a retired judge may, with his consent, be assigned by the Supreme Court in temporary judicial service as prescribed by Rule of the Supreme Court. The Supreme Court has adopted Pennsylvania Rules of Judicial Administration 701 which provides as follows:

Rule 701. Assignment of Judges to Courts

(a) *Certification of availability for assignment by former or retired judges.* A former or retired judge who consents to accept assignment on temporary judicial service shall file with the administrative office a statement of the period during which he is willing to be assigned to a court, and a certification that he has not, since his last judicial duty, engaged in the practice of law or in any activity incompatible with judicial office and does not intend to engage in the practice of law in the future. In order to be qualified for assignment, such judge shall not have been defeated for re-election and shall have served as a judge (whether or not continuously or on the same court) by election or appointment for an aggregate of at least ten years, except that any duly elected justice or judge, having an aggregate of six years' judicial service, who is required to retire at age seventy, shall be eligible for assignment.

21. The legislature has enacted laws pursuant to Article V, § 16(c) providing for assignment of former judges and compensation for such services. The compensation is $250 per day worked. 65 P.S. § 366.2(h). The actual compensation is often in fact less because of general budget-

ary restrictions applicable to all judges who are age seventy or older. See Stipulation.

22. Article V, § 18 of the Pennsylvania Constitution provides for creation of a Judicial Inquiry and Review Board to consider grounds for suspension, removal, discipline and compulsory retirement of judges for prohibited activities, including a violation of any legal or judicial canon, misconduct in office, neglect of duty, failure to perform their duties, conduct which prejudices the proper administration of justice or brings the judicial office into disrepute, or for a disability seriously interfering with the performance of their duties, and specifically states that the provision is in addition to and not in substitution for the provisions for impeachment for misbehavior in office contained in Article VI of the Constitution.

23. (a) Pursuant to the aforesaid provisions the Supreme Court has promulgated Rules of Procedure Governing the Judicial Inquiry and Review Board. (Rules and procedures are specifically outlined in Plaintiff's Exhibit P–8).

(b) The legislature, prior to the 1968 Constitution, had enacted provisions enabling the Supreme Court to provide procedures for the initiation of proceedings and rendering of a determination of disability or infirmity of a judge. Upon determination that a judge is infirm or disabled the Supreme Court could present a certificate of the determination to the Governor, and the Governor can determine that the appointment of an additional judge is necessary for the efficient dispatch of business. Act of October 19, 1967, P.L. 453 §§ 1 and 2, 17 P.S. §§ 807, 808, repealed by Act of April 28, 1978, P.L. 202, § 2(a) [1404]. Those provisions have been replaced by 42 Pa.C.S. § 3331 *et seq.* which establishes the Judiciary Inquiry and Review Board. Pursuant to the aforesaid provisions the Supreme Court has promulgated Rules of Procedure Governing the Judicial Review Board. The Judicial Review Board will conduct an investigation regarding any judge whose performance is in question. The Board then will recommend to the Supreme Court, in the event that it is necessary, that the judge in question be dismissed from his judicial duties.

24. No other elected or appointed officials in Pennsylvania are forced to retire or are disqualified from holding elected or appointed office by reason of attaining a maximum age, and other employees of the Commonwealth of Pennsylvania, who are not in physically demanding positions, are not forced to retire upon attaining a maximum age.

25. Pursuant to the rules of the Pennsylvania Supreme Court, statutes, and constitutional provisions, each of the plaintiffs have or will be retired from office on the following dates notwithstanding the fact that none of them will have completed the term of office for which he or she was elected:

| | | |
|---|---|---|
| a) Sabo | — | December 19, 1990 |
| b) Guarino | — | March 21, 1991 |
| c) Reed | — | December 18, 1990 |
| d) Prescott | — | June 4, 1991 |
| e) Jerome | — | February 14, 1992 |
| f) Katz | — | December 19, 1991 |
| g) Kremer | — | January 26, 1991 |
| h) Della Porta | — | December 18, 1991 |

26. Plaintiffs are healthy, and able to perform their judicial duties, and have served as judges for many years.

27. There are currently 76 senior judges who are serving on the Superior Court, the court of Common Pleas and the Commonwealth Court. Many of whom are well over the age of seventy. (see Plaintiff's Exhibit P–9).

28. Between January 1, 1969, when the mandatory retirement provision went into effect, and the present, there has been and continues to be a shortage of judicial manpower in Pennsylvania. In 1990 there were 45,056 civil cases filed in the Court of Common Pleas, as compared to 28,584 in 1986. In 1990 there were 8,792 criminal cases filed. In 1986 there were 9,792 criminal cases filed.

29. Senior judges, like non-senior status judges, can be assigned any duties in the Commonwealth.

30. The method used for determining whether a judge who reaches age 70, who desires to serve as a senior judge is set forth in Pennsylvania Rule of Judicial Administration 701. There is no provision for

physical or mental examination of judges who apply for senior status.

31. Before the 1968 Amendment to the Judiciary article of the Pennsylvania Constitution there was no compulsory retirement of judges in Pennsylvania.

32. Before 1965 there was no provision in the law of Pennsylvania for the service of former judges after retirement.

33. The current annual salary for judges of the Courts of Common Pleas who are not senior judges is $80,000 per year. Included in the benefits of non-senior judge are: sick leave with pay, paid vacation, pay regardless of whether the judge is in chambers or in court, or attending a judicial conference, as well as life insurance benefits.

34. The current compensation for senior judges assigned duties is $250 per in-court day actually worked. Senior judges receive no paid sick days, paid vacation or life insurance benefits. Moreover, no compensation is provided for days spent working in chambers.

35. Per diem payments to senior judges are not considered compensation under the State Employees Retirement Act of 1974, and therefore, do not increase the pension of such judges.

36. The availability of funds to pay senior judges to perform their duties is dependent on the appropriation of funds for that purpose by the legislature.

37. During the past several years the legislative appropriation for the payment of per diem salary of senior judges has not been sufficient to pay the per diem salary for all the days of service of senior judges. As a result, many senior judges worked for part of the time with no compensation at all. See Stipulation.

38. During the course of their non-senior service as judges, deductions have been made from the monthly salary of the plaintiffs for contribution to their pension fund.

39. Contributions made by the judges, including the plaintiffs, appreciate at a specified rate of interest.

40. Per diem payments to senior judges are not considered compensation under the State Employees Retirement Act of 1974, and therefore, do not increase the pension of such judges.

48. The amount of money contributed to the pension fund by the Commonwealth for the benefit of any judge increases with each additional year of credited service attributed to that judge.

49. Upon retirement, each judge, is given various options with regard to receipt of pension funds. These options include the right to withdraw in a lump sum an amount of money not to exceed his or her total accumulated contributions to the pension fund and to receive annuities in varying amounts for his or her lifetime and or the life of a designated beneficiary at his or her death. (See Stipulation) The only variables being the amount of money contributed to the fund, which depends on the individual judge's years of credited service, the amount of his or her salary during his or her non-senior service, and the life expectancy of a judge upon retirement or the life expectancy of the judge's beneficiary.

50. The monthly payment with the judge and/or the judge's beneficiary will receive under any given annuity will be larger, the shorter the life expectancy of the judge and/or his beneficiary at the time of the judge's retirement.

51. To the extent that a senior judge receives payments from the pension fund during that service, the fund that will be available for his or her pension upon completion of his or her past retirement service is diminished. The compensation of a senior judge is limited by statute to an amount which together with the payments he or she receives from the pension fund will not exceed $80,000.

52. The mere fact that a judge reaches the chronological age of seventy does not affect his ability to perform his judicial duties and the vast majority of judges reaching the age of seventy are capable of continuing to perform those duties. See Testimony of Dr. Irvin Gerson.

53. The productivity of senior judges on a day to day basis has been equal to that of non-senior judges. Plaintiffs work, on the

average between 50–60 hours per week. Judge Sabo and Judge Reed continue to preside over trials in the same manner as they did before reaching seventy.

54. The service of senior judges called back to perform judicial duties has been essential to the administration of the court system, especially in Delaware and Philadelphia Counties. The speedy trial rule in criminal cases (Pa.R.Cr.P.1100 requiring that criminal defendants be tried within 180 days) could not be complied with and the backlog of civil cases would be uncontrollable. (see Finding of Fact No. 28 noting escalating and monumental caseload).

55. There are fourteen days in a year which are court holidays, for which senior judges can earn no salary. If a judicial conference is held non-senior judges are paid for attendance, senior judges are not.

56. Persons, such as judges, who achieve success in learned professions are likely to retain their mental abilities for considerably longer periods of time than the population at large. See testimony of Dr. Irvin Gerson.

57. No judge who has applied for senior status since the enactment of the mandatory retirement provision has been denied senior status.

58. Judges under age seventy who perform judicial services receive their judicial salary for unlimited periods of time while they are unable to work because of illness, as long as it appears that they will, at some future time, be able to return to their judicial duties. However, senior judges over age seventy who return to temporary judicial service do not receive any paid sick days.

59. February 19, 1991 is the last day by which the Secretary of the Commonwealth must notify the Philadelphia County and Delaware County Boards of Election of the offices, including the office of judge of the Court of Common pleas, for which candidates are to be nominated. The primary for such offices will occur November 5, 1991, and the election for such offices will occur on November 5, 1991. Defendant Secretary of the Commonwealth will notify the County Boards of Elections by February 19, 1991 that the plaintiffs' offices are vacant, that the political parties' nominees for the aforesaid offices are to be elected on May 21, 1991 and that the offices will be filled in the election on November 5, 1991.

60. Plaintiffs are not protected from the mandatory retirement provision enacted in the 1968 Pennsylvania Constitution, Article V, § 16(b). Since plaintiffs have been elected to the bench or retained for another judicial term after 1968, the plaintiffs are not protected by the so-called "grandfather clause" in Section 8 of the Schedule to Article V of the Pennsylvania Constitution.

B. *Discussion and Conclusions of Law:*

    *a. Equal Protection:*

       *1. Standard of review:*

■ The standard of review to be applied by this court in determining whether Pennsylvania's mandatory "retirement" provision violates the Equal Protection Clause of the Fourteenth Amendment, is the "rational relationship" standard. *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). The rational relationship test requires that, in reviewing a state statute or constitutional provision under the equal protection clause, a court must determine if the provision in question is **rationally** related to **any legitimate state objective.** The court applies this standard as the plaintiffs are neither members of a suspect class, See *Malmed v. Thornburgh,* 621 F.2d 565, 570 (3rd Cir.1980) citing *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (the class of elderly people is not a suspect class), nor does their claim involve a fundamental interest (the right to public employment is not a fundamental interest). *Ibid.*

■ Under the rational relationship test, it is not constitutionally relevant that the purpose that the court finds to be the legitimate objective of the provision be the actual impetus for the enactment of the constitutional provision. Indeed, "[a] statutory discrimination will not be set aside if **any** state of facts reasonably may be conceived

to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961) (emphasis added).

■ The Plaintiffs have the burden of proving that the Pennsylvania Constitutional Convention had no reasonable basis for the adoption of the mandatory "retirement" provision. *Malmed v. Thornburgh*, 621 F.2d 565 at 572 (3rd Cir.1980). Only once the court has determined that the legislature has no rational basis for differentiating between judges under seventy and judges over seventy, can the court address the question of whether the equal protection clause is violated.

### 2. *Legislative History:*

The court looks first to the legislative history behind the provision to evince the intent of the legislature in enacting this provision.

In 1967, a special constitutional convention convened and made recommendations for revising the Pennsylvania Constitution in several fields, including that of judicial administration. After extensive deliberations, the Judiciary Subcommittee of the Preparatory Committee for the Pennsylvania Constitutional Convention drafted the Judiciary Article. The Judiciary Subcommittee identified as a matter of concern "the problem of retiring judges who are mentally or physically unable to perform their duties either by reason of old age or by reason of some mental or physical ailment," The subcommittee described this problem as

> a sensitive and delicate matter. Practically all lawyers and judges are familiar with the problem, but prefer to keep it in the legal family. Too often the disabled judges refuse to retire. There probably are many' reasons some personal and others objective. Some prefer the active life of a judge to the withdrawal of retirement. Others are not financially independent, and may find retirement and disability pensions inadequate.

The Judiciary Subcommittee summarized the arguments in favor of a mandatory retirement policy as follows:

(a) substantially increases judicial manpower when a plan for part-time post-retirement service exists. By continually bringing in younger judges while retaining the part-time services of willing and able retired judges, a system of mandatory retirement plus post-retirement service helps solve the pressing problem of court congestion and delay. As mentioned previously, Pennsylvania already has provided for voluntary post-retirement service.

(b) eliminates unpleasantness of removing aged and disabled judges on an individual selective basis. Mandatory retirement is more impersonal than individual removal; everyone is treated alike. The difficulty of determining which judges are senile and which judges are not is largely avoided.

(c) prevent[s] more harm by few senile judges [which] more than offsets loss of judges who retain full powers past normal age. Besides, the services of able retired judges may be secured by a provision for post-retirement service.

(d) corresponds with the current trend towards mandatory retirement in other public and private employments. There appears to be no good reason why judges should be treated any differently form other public officials, teachers, executives, and other professional people who are subject to compulsory retirement.

Judiciary Subcommittee of the Preparatory Committee for the Pennsylvania Constitutional Convention ("the subcommittee"), Reference Manual No. 5 at 203, –04 (1968). See *Malmed v. Thornburgh*, 621 F.2d 565, 567, 569 (3d Cir.), *cert. den.* 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). (designation of paragraphs as (a)(b)(c)(d) not contained in original text).

The Third Circuit, in *Malmed*, held that the mandatory "retirement" provisions were rationally related to the above articulated objectives. The Court of Appeals took a somewhat tautological approach, however, in analyzing the relationship between the stated goals of the Commonwealth and the mandatory "retirement"

provision. The Third Circuit essentially held that because the stated objectives of the framers were legitimate, the means chosen to achieve those objectives were rational. The Court of Appeals concluded that the mere fact that the constitutional provision may have been both under-inclusive and over-inclusive [9] did not itself mean that there was no rational relationship between the "retirement" of judges over seventy and the articulated objectives of the legislature. The Third Circuit's inquiry, however, ended there. Because the Court of Appeals was not presented with specific challenges to the articulated objectives of the framers, the court failed to examine the facts presented by plaintiff which shot to the very fibre of the rationality of using the current "retirement" system to achieve those objectives.

"The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Vance v. Bradley*, 440 U.S. at 97, 99 S.Ct. at 943, 59 L.Ed.2d at 176. This court cannot allow, however, blatant discrimination where it simply operates to arbitrarily discriminate against a specific class of people and fails to serve a rational state objective.[10] The question before this court, therefore, is not whether mandatory retirement at a certain age is per-se unconstitutional. Clearly

there are situations where mandatory retirement, though often under-inclusive and/or over-inclusive, is rationally related to a legitimate state objective.[11] The question before the court is whether the mandatory "retirement" pursuant to Article V, § 16(b) of the Pennsylvania Constitution is rationally related to the stated objectives of the constitutional framers.

### 3. *Articulated Objectives of the Legislature Examined:*

■ First, the court notes the first paragraph of the subcommittee's statement suggesting that mandatory retirement increases available, and much needed,[12] judicial manpower. Increasing judicial manpower in the face of an escalating caseload is clearly a legitimate state goal. The means used to effectuate that goal, however, are not rationally related to the stated end. Indeed, the transparent objective of the constitutional provision is to obtain judicial services without paying the full cost of those services. Article V, § 16(b) does not operate as a mandatory retirement provision at all. It instead operates as a pretext for paying one category of judges less than another category of judges, in a manner so egregious that it constitutes purposeful and invidious discrimination against judges over seventy. While the Commonwealth has a legitimate goal in reducing its costs, there is no rational reason for paying senior judges less money for the same, and in many cases

---

**9.** There are clearly many judges over seventy who are more than competent in performing their duties, and there may be judges under the age of seventy or over the age of seventy who are somewhat less than competent.

**10.** See *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171, 176 (1979), articulating the standard for determining the constitutionality of a statute where challenged on equal protection grounds.

... we will not overturn such a statute unless **the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.**
*Ibid.*

**11.** See e.g. *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) [holding that the mandatory retirement of foreign service per-

sonnel at age 60 bore a rational relation to a variety of legitimate United States goals]; See also *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) [holding that Massachusetts statute mandating retirement of uniformed police officers served to remove police officers whose fitness for uniformed police work diminished with age and was therefore rationally related to a legitimate state purpose].

**12.** Consider, for example, that 45,056 civil cases were filed in the Court of Common Pleas in 1990, while only four years ago, in 1986, 28,584 cases were filed. According to the testimony of President Judge Blake, there is a five year wait to trial on the civil docket. Accordingly, Judge Blake has assigned every available senior judge during his term as President Judge.

more,[13] work. Clearly, if the framers, in an effort to save money, had enacted a constitutional provision setting the salary paid to all judges who had light brown eyes at $50,000 per year while setting a salary of $80,000 per year to judges who had dark brown, blue or green eyes I could not conclude there was a rational reason for distinguishing between the two groups. All Judges perform the same functions and have the same judicial powers, regardless of their eye color. Similarly, senior judges have the same judicial power and authority as regular status judges, yet, there are many days where senior judges preside over trials, conduct settlement conferences, draft opinions, attend judicial conferences ... and are not paid for their work, while regular status judges are paid for vacation days and an unlimited amount of sick days.[14] Age is an arbitrary distinction on which to base such a drastic difference in compensation for services. The Commonwealth has arbitrarily chosen judges over seventy to shoulder the burden of the cost of judicial services. This court has found no rational basis for concluding that senior judges are entitled to less money than regular status judges for performance of the same duties.[15] The court therefore cannot countenance the inferior level of payment for judicial services received by senior judges.

■ The court will now address simultaneously the second and third reasons articulated by the subcommittee. First, the court notes that the institution of a mandatory "retirement" age does not eliminate the embarrassment of removing a senile judge. While it is true that one senile judge may wreak havoc in the judicial system, expert testimony has shown without rebuttal that there is no correlation between mental incapacity in professionals (such as judges) and increased age. Moreover, even if it were true, which would be contrary to the evidence, that there was an increased probability that senility would occur with increased age, the mandatory "retirement" system currently in place is not rationally related to that objective. Judges

13. Many senior judges are scheduled for more days of trial than are regular judges. Regular judges are generally assigned cases for a period of five or six weeks at a time, with one week in chambers at the end of that period of presiding over trials to conduct legal research and to write opinions. Senior judges are not given any "chambers days" and therefore must write opinions and do research without compensation, or must take their work home at night or work on weekends to get such work done.

14. Albeit as long as the possibility that they will be able to return to work exists.

15. The Pennsylvania legislature could not reasonably have concluded that senior judges are any less capable than regular status judges, therefore, it surely could not have concluded that the services of senior judges were worth any less than the service of regular status judges. Senior judges are often scheduled to preside over more trials than regular status judges and there are no bars preventing senior judges from performing their judicial functions. Moreover, senior judges perform the same duties before and after retirement.

Moreover, even excluding sick days, vacation days and judicial conferences, the per diem for senior judges currently set by the legislature is not proportionately equal to the salary received by regular status judges. A senior judge is paid at a rate of $250 per day for every day he or she is actually presiding in open court. (Stipulation paragraph 4) (Doc. No. 20). Therefore, if a senior judge in the Court of Common Pleas worked in court for 247 days, representing every day in the year except 104 weekend days and 14 holidays with no chambers days, no sick time, no vacation and no conference days, that judge would earn only $61,750 as compared to the $80,000 earned by regular status judges.

Although the Third Circuit, in *Malmed*, concluded without analysis that "the legislature could consider that state judicial pensions available to most state judges [as pensions are] **additional** compensation available to senior judges but not available to active judges." 621 F.2d at 573 note 14 (emphasis contained in original text), this court fails to see the rationality in considering pensions as "additional" compensation. Pension benefits are not compensation, instead they represent money in which judges have a vested interest, regardless of whether they choose to continue their judicial services. Moreover, pension benefits are fixed in varying amounts depending on a variety of factors. Because senior judges are not permitted to receive a combined income (from their total per diems earned and their withdrawals from their pension funds) of more than $80,000 per year they do not receive any "additional" source of money from the Commonwealth, and often, in fact, withdraw much of their pension benefits over a period of a few years, leaving many senior judges with little "additional" compensation.

over seventy are given senior status as a matter of course. Indeed, no judge who has applied for senior status has been denied senior status. That is, judges who are over seventy, even if they are more likely to suffer from senility, are not denied the opportunity to serve on the bench. Senior judges therefore continue to serve in the same manner as regular status judges, albeit at reduced compensation. Moreover, if any of these judges become senile they are subject to the same method of removal as are regular status judges.[16] Simply putting judges over seventy on "senior status", therefore, does not prevent the harm caused by senile judge, nor does it insulate senior judges from the embarrassment of removal. All judges, regardless of whether they are senior judges or regular status judges, are removed from service by the same method.[17] Judges are removed subject to the recommendation of the Judicial Inquiry and Review Board. See Plaintiff's Exhibit 2—Rules of Procedure Governing the Judicial Inquiry and Review Board. Without instituting some form of review, or alternate method of ascertaining judicial

competence of senior judges, the framers could not reasonably have expected that instituting mandatory "retirement" would somehow alleviate the embarrassment of a public removal through recommendation of the Judicial Inquiry and Review Board. Moreover, if the actual goal of the framers in enacting the mandatory retirement provision was to prevent harm caused by senile judges, then this court fails to see how allowing, as a matter of course, those allegedly more susceptible to senility to continue to serve rationally serves that purpose, as senior judges while they receive less pay, are not prevented from engaging in active service.[18]

The court notes further that it is clear that judges, upon reaching the age of seventy are expected to continue their service,[19] as the legislature could not reasonably have concluded that in the face of the extraordinary increase in the caseload of the courts of Pennsylvania that cases could be adjudicated within a reasonable time period or that the Speedy Trial Act[20] in criminal cases would be complied with,

16. While it is true that Court of Common Pleas Judges are "temporarily" retained month by month, the retention/certification occurs as a matter of course. Indeed, there exists no other review system of a judge's performance other than the Judicial Inquiry and Review Board. Superior court judges are certified for senior status service of a year at a time. Moreover, there is no indication that the reduced level of compensation serves to deter senior judges from continuing in judicial service. In fact, many senior judges continue to serve without compensation for substantial periods of time. See Stipulation. Additionally, senior judges continue to do legal research and write opinions, conduct conferences in chambers, and attend judicial conferences, despite the fact they do not receive a per diem for performance of these judicial services. See Stipulation, Paragraph 4 for the terms under which the per diem is received.

17. Article V, § 18(d) of the Pennsylvania Constitution provides in pertinent part:
**any** justice or judge may be suspended, removed from office or otherwise disciplined for violation of section seventeen of this article, misconduct in office, neglect of duty, failure to perform his duties or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute and may be retired for disability seriously interfering with the performance of his duties. (emphasis added)

Article V, § 18(*l*), (m) and (n), Article VI note further situations which mandate the forfeiture of service or the cessation of performance of judicial functions.

18. Cf. N.Y. Const., Art. 6, § 25(b), which was upheld against constitutional attack in *Rubino v. Ghezzi*, 512 F.2d 431 (2d Cir.1975), allows judges over seventy to be designated by the Governor for temporary service, but in no case allows for service past the last day of December in the year in which a judge reaches the age of seventy-six.

Moreover, N.Y.Judiciary Law § 115(3), provides that a retired justice certified by the governor for continued service has the same powers, duties, salary status and rights as the other justices, and that retired judges are subject to assignment by the appellate division of the supreme court of the judicial department of their residence.

19. Indeed, judges are sent and asked to fill out forms (not solicited by them) requesting senior status before they reach age seventy. Moreover, no provisions are made for the interruption of cases or other judicial service that could result if, in fact, a judge were denied senior status.

20. Pa.R.Cr.P. 1100 requires that a criminal defendant be tried within 180 days or be discharged.

without the service of senior judges.[21] The court therefore finds that the stated objectives of the constitutional convention in enacting this provision are clearly not served by the operation of the provision.

 The fourth rationale proffered by the framers in the subcommittee statement is that mandatory retirement is consistent with the "current trend towards mandatory retirement in other public and private employments." Judiciary Subcommittee of the Preparatory Committee for the Pennsylvania Constitutional Convention, Reference Manual No. 5 at 203,–04 (1968). See *Malmed v. Thornburgh,* 621 F.2d 565 at 567 (3d Cir.1980), *cert. den.* 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). The current trend, however, is toward **eliminating** mandatory retirement on the basis of age. In fact, no other public officials in the Commonwealth who are in non-physically demanding positions are subject to a mandatory retirement provision. For example, there is no mandatory retirement age for the Governor, the Lieutenant Governor, the Attorney General, the Treasurer or the Secretary of the Commonwealth. Moreover, now that the ADEA has been amended to protect employees over the age of 40, it is clear that the trend in private employment, as well, is toward the elimination of mandatory retirement.

The Court therefore concludes that the operation of Article V, § 16(b) of the Pennsylvania Constitution as it is currently applied to judges over 70 years of age violates the judges' constitutional guarantee of equal protection under the laws.

*b. Due Process:*

In Section III, B, (a), I have held that the current Pennsylvania mandatory "retirement" system is unconstitutional as it violates the plaintiff's right to equal protection under the laws. This holding, by itself is a sufficient ground upon which to enjoin further operation of Article V, § 16(b) and all of its enabling statutes. The court will

therefore not address plaintiffs' contention that Article V, § 16(b) violates their right to due process because it creates an "irrebuttable presumption" of incompetence.

---

**21.** As of January 9, 1991 there were 76 senior judges serving on the Pennsylvania Courts of Common Plea. See Plaintiff's Exhibit 8. Clearly without the assistance of these judges, the

current backlog of cases on the civil docket would be unmanageable. See also *supra.* note 10.